**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MEGHAN HUNTER, Individually and as Parent and
Natural Guardian of MH; and MH;

                               5:17-cv-00052 (BKS/TWD)

                     Plaintiffs,

v.

SHANGHAI HUANGZHOU ELECTRICAL APPLIANCE
MANUFACTURING CO., LTD.; SHANGHAI
HUANGZHOU INDUSTRY CO., LTD.; QUALITY
CRAFT HOME DÉCOR, INC.; QUALITY CRAFT
MERGERCO; QUALITY CRAFT, LTD.; QCIL
INTERNATIONAL, INC.; HOME DEPOT, USA, INC.;
THE HOME DEPOT, INC.; and HD DEVELOPMENT OF
MARYLAND, INC.,

                      Defendants.

_____

**Appearances:**

_For Plaintiffs:_
Timothy P. Murphy, Esq.
Ryan M. Poplawski, Esq.
Hancock Estabrook, LLP
1800 AXA Tower I – 100 Madison Street
Syracuse, New York 13202

_For Defendants Quality Craft Home Décor, Inc., Quality Craft Mergerco, Quality Craft, Ltd.,_
_and QCIL International, Inc.:_
Marc H. Goldberg, Esq.
Phillips Lytle, LLP
OMNI Plaza, 30 South Pearl Street
Albany, New York 12207

_For Defendants Home Depot, U.S.A., Inc., The Home Depot, Inc., and HD Development of_
_Maryland, Inc.:_
Steven W. Williams, Esq.
Smith, Sovik, Kendrick & Sugnet, P.C.
250 South Clinton Street, Suite 600
Syracuse, New York 13202

Hon. Brenda K. Sannes, United States District Judge:

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Currently before the Court is a motion for default judgment (the "Motion") under Rule

55(b) of the Federal Rules of Civil Procedure (the "Federal Rules") and Rule 55.2 of the Local

Rules of Practice for the United States District Court for the Northern District of New York (the

"Local Rules") brought by Plaintiffs Meghan Hunter, individually and as parent and natural

guardian of M.H., and M.H. (collectively, "Plaintiffs") against Defendants Shanghai Huangzhou

Electrical Appliance Manufacturing Co., Ltd. and Shanghai Huangzhou Industry Co., Ltd.

(collectively, the "Shanghai Huangzhou Defendants") (Dkt. No. 121). For the reasons set forth

below, Plaintiffs' Motion is denied without prejudice to renewal.

## II.     FACTUAL AND RELEVANT PROCEDURAL BACKGROUND[1]

Plaintiffs are an infant, M.H., and her mother, Meghan Hunter, both of whom reside in

Massena, New York. (Dkt. No. 11, at 2). During the winter of 2013, Meghan Hunter purchased a

portable Electric Fireplace Heater bearing the "Sylvania" brand name ("the Heater") from the

Home Depot store located in Massena, New York. (*Id.* at 4). On November 24, 2013, the Heater

was placed into M.H.'s bedroom and turned on. (*Id.*). At approximately 10:15 a.m., Meghan

Hunter put M.H. in her crib in her bedroom to take a nap, then left the house to shop, leaving

M.H. in the care of her then 15-year-old son. (*Id.*). When Meghan Hunter returned home at

---

[1] Except where otherwise indicated, all facts set forth herein are based on Plaintiffs' Amended Complaint filed on January 24, 2017 (the "Amended Complaint"). (Dkt. No. 11). Because the Shanghai Huangzhou Defendants have failed to respond to the Amended Complaint, the well-pled allegations therein are deemed admitted and assumed to be true for purposes of this Motion. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09-cv-4810, 2011 WL 1131401, at *2, 2011 U.S. Dist. LEXIS 32249, at *5-6 (E.D.N.Y. Mar. 11, 2011) ("In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim.").

approximately 1:15 p.m., she found M.H. completely unresponsive in her crib. (*Id.*). The room had become "incredibly hot," allegedly due to defects in the Heater that caused it to generate a dangerous level of heat. (*Id.* at 4-5). M.H. was taken to Massena Hospital, where her body temperature was noted to be 108 degrees. (*Id.*). Plaintiffs allege that there was no heat source in the bedroom other than the Heater that could have caused M.H.'s high body temperature. (*Id.*). M.H. has suffered serious and lasting injuries as a result of this incident, including: heat stroke with an acute brain injury; traumatic brain injury; left-sided hemiparesis; cognitive impairment; seizures; developmental impairment; vision problems; inability to walk; inability to sit; and inability to feed herself. (*Id.* at 5).

On November 22, 2016, Plaintiffs initiated this action by filing a Summons and Complaint in Onondaga County Supreme Court (the "Original Complaint"). (Dkt. No. 2). On January 13, 2017, Defendants Home Depot, U.S.A., Inc., The Home Depot, Inc., and HD Development of Maryland, Inc. removed the action to this Court by filing a Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446, on the basis of federal diversity jurisdiction under 28 U.S.C. § 1332(a). (Dkt. No. 1). On January 24, 2017, Plaintiffs filed their Amended Complaint in this Court. (Dkt. No. 11).

Plaintiffs name nine Defendants: Home Depot, U.S.A., Inc., the Home Depot, Inc., HD Development of Maryland, Inc., Quality Craft Home Décor, Inc., Quality Craft Mergerco, Inc., Quality Craft Ltd, QCIL International, Inc. and the "Shanghai Huangzhou Defendants."[2] (*Id.*). In their Amended Complaint, Plaintiffs allege, in substance, that the nine Defendants designed, manufactured, assembled, marketed, distributed and sold the Heater in a defective and negligent

---

[2] Plaintiffs' claims against an additional three Defendants—Collins Co. Ltd., Collins International Co. Ltd., and Osram Sylvania, Inc.—have been voluntarily dismissed without prejudice pursuant to a stipulation among all parties, which was approved by the Court on July 22, 2019. (Dkt. No. 86).

manner, and that the resulting defects in the Heater caused the serious and lasting injuries described above. (*Id.* at 4-13). Plaintiffs assert causes of action against all nine Defendants for strict products liability based upon defective design, defective manufacture, and failure to warn; negligence; breach of the implied warranties of merchantability and fitness for particular purposes; and breach of express warranty. (*Id.* at 6-13). Throughout their Amended Complaint, Plaintiffs refer collectively to "Defendants" as a group. They allege that Defendants, as a collective, "regularly do business in New York State and derive substantial revenue from goods sold and used in New York State and in interstate and international commerce," and that they "supplied and sold goods and services to individuals and businesses located in New York State, including the Home Depot Store" at which the Heater was purchased. (*Id.* at 4). Plaintiffs do not allege additional details about the relationships between the various Defendants, each Defendant's contacts with New York, or each Defendant's particular role in the allegedly defective design, manufacture, assembly, marketing and sale of the Heater. (*Id.* at 1-13).

A number of Defendants named in Plaintiffs' Amended Complaint are located in foreign countries, including, as relevant here, the Shanghai Huangzhou Defendants, both of which are located in Shanghai, People's Republic of China ("China"). To effectuate service of the Amended Complaint on these Defendants, Plaintiffs retained Civil Action Group, d/b/a/ APS International, Ltd. ("APS"), an organization specializing in service of process on foreign entities pursuant to the Hague Convention. (Dkt. No. 17). On February 15, 2017, Plaintiffs filed a letter motion requesting a 16-month extension of time (until June 30, 2018) to effectuate service on the Shanghai Huangzhou Defendants and other foreign defendants, based in part on APS's representations regarding their expected timeline for completing such service in China. (*Id.*). On February 23, 2017, the Court granted this extension, but ordered discovery to proceed in the

meantime. (Dkt. No. 24). By June 2018, service upon the Shanghai Huangzhou Defendants had still not been successfully effectuated. Thereafter, at the Court's request, Plaintiffs filed periodic updates regarding the status of such service. (Dkt. Nos. 46, 49, 50, 55-57, 59, 67, 85, 106).

On October 31, 2019, Plaintiffs filed Certificates of Service completed by the Central Authority of China, indicating that service of the Amended Complaint had been effectuated on Shanghai Huangzhou Industry Co., Ltd. on December 10, 2018, and on Shanghai Huangzhou Electrical Appliance Manufacturing Co., Ltd. on December 11, 2018. (Dkt. Nos. 108-09).[3] That same day, Plaintiffs filed a Request for Entry of Default against the Shanghai Huangzhou Defendants pursuant to Federal Rule 55(a), asserting that the Shanghai Huangzhou Defendants had defaulted by their "failure to appear, plead or otherwise defend" the action within the 21-day timeframe allowed under Federal Rule 12(a)(1). (Dkt. No. 110). Plaintiffs' initial accompanying declaration in support of their Request for Entry of Default failed to specify whether the Shanghai Huangzhou Defendants were infants, in the military or incompetent persons, as required under Local Rule 55.1. (*Id.* at 2-3). However, on November 12, 2019, Plaintiffs filed an Amended Request for Entry of Default with an amended supporting declaration that corrected this deficiency. (Dkt. No. 116, at 2-3). On November 15, 2019, Plaintiffs obtained a clerk's entry of default, granting their requested entry of default against the Shanghai Huangzhou Defendants. (Dkt. No. 118).

---

[3] On July 9, 2019, Plaintiffs filed a Certificate of Service completed by the Central Authority of China reflecting that service had been effectuated on Shanghai Huangzhou Industry Co., Ltd. on April 1, 2019, but did not file a similar Certificate of Service for Shanghai Huangzhou Electrical Appliance Manufacturing Co., Ltd. at that time. (Dkt No. 74). Subsequently, in October 2019, as noted, Plaintiffs filed Certificates of Service for both Shanghai Huangzhou Defendants indicating that both had been served within a day of each other in December 2018. (Dkt. Nos. 108-09). In both their Request for Entry of Default and this Motion, Plaintiffs have relied on the Certificates of Service filed in October 2019.

On December 20, 2019, Plaintiffs moved for default judgment against the Shanghai

Huangzhou Defendants pursuant to Federal Rule 55(b) and Local Rule 55.2. (Dkt. No. 121).

Plaintiffs attached to the Motion the supporting affidavit required by Local Rule 55.2(b), as well

as copies of both the Original and Amended Complaint, the Notice of Removal, the Certificates

of Service with respect to the Shanghai Huangzhou Defendants, both the original and amended

Request for Entry of Default, and their clerk's entry of default. (Dkt. Nos. 121, 121-1, 121-2).[4]

On December 23, 2019, Plaintiffs served the Motion and accompanying exhibits on the Shanghai

Huangzhou Defendants via Federal Express International Priority Mail. (Dkt. No. 122). The

Shanghai Huangzhou Defendants have filed no response to the Motion.

## III.    DISCUSSION

### A.       Default Judgment Standard

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for

obtaining a default judgment." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).

First, under Federal Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P.

55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead

or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the

party's default."); *see also* Local Rule 55.1 (requiring a party seeking a clerk's entry of default to

"submit an affidavit showing that (1) the party against whom it seeks a judgment . . . is not an

infant, in the military, or an incompetent person (2) a party against whom it seeks a judgment for

affirmative relief has failed to plead or otherwise defend the action . . . and (3) it has properly

served the pleading to which the opposing party has not responded"). Second, under Rule 55(b),

the plaintiff may apply for entry of default judgment by the clerk "[i]f the plaintiff's claim is for

---

[4] The Court notes that Plaintiffs did not attach to their Motion a proposed form of default judgment, as required by
Local Rule 55.2(b).

a sum certain," or by the court "[i]n all other cases." Fed. R. Civ. P. 55(b)(1), (2); *see also* Local

Rule 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default

judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of default . . . a

proposed form of default judgment, and a copy of the pleading to which no response has been

made. The moving party shall also include in its application an affidavit of the moving party or

the moving party's attorney setting forth facts as required by L.R. 55.2(a).").

By failing to answer the Complaint, a Defendant is deemed to have admitted the factual

allegations in the Complaint. *See Greyhound Exhibitgroup*, 973 F.2d at 158 ("[A] party's default

is deemed to constitute a concession of all well pleaded allegations of liability."); *Rolex Watch,*

*U.S.A.*, 2011 WL 1131401, at *2, 2011 U.S. Dist. LEXIS 32249, at *5-6 ("In considering a

motion for default judgment, the court will treat the well-pleaded factual allegations of the

complaint as true, and the court will then analyze those facts for their sufficiency to state a

claim."). But before entering default judgment, the Court must review the allegations to

determine whether Plaintiffs have stated a valid claim for relief. *See Finkel v. Romanowicz*, 577

F.3d 79, 84 (2d Cir. 2009); *Telequip Corp. v. Change Exch.*, No. 01-cv-1748, 2004 WL

1739545, at *1, 2004 U.S. Dist. LEXIS 14892, at *3 (N.D.N.Y. Aug. 3, 2004).

### B.     Plaintiffs' Entitlement to a Default Judgment

The Court first analyzes whether Plaintiffs have met all the procedural requirements to

obtain a default judgment under Federal Rule 55(b)(2) and Local Rule 55.2(b). As a threshold

matter, Plaintiffs are only entitled to such a judgment if the Shanghai Huangzhou Defendants

were properly served with the Amended Complaint, and subsequently failed to timely respond.

As the Shanghai Huangzhou Defendants are located outside the United States, the governing rule

is Federal Rule 4(f), which permits service of process upon an individual abroad "by any

internationally agreed upon means of service that is reasonably calculated to give notice, such as

those authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1). Because both China—the

country in which the Shanghai Huangzhou Defendants are located—and the United States are

signatories to the Hague Convention, "service of process on the Defendants in [China] must

conform to the requirements of the Hague Convention." *Unite Nat'l Ret. Fund v. Ariela, Inc.*,

643 F. Supp. 2d 328, 332-33 (S.D.N.Y. 2008); *see also Volkswagenwerk Aktiengesellschaft v.

Schlunk*, 486 U.S. 694, 705 (1988) ("[C]ompliance with the [Hague] Convention is mandatory in

all cases to which it applies.").

As noted above, Plaintiffs have filed Certificates of Service completed by the Central

Authority of China, indicating that the Amended Complaint was properly served on both of the

Shanghai Huangzhou Defendants in December 2018. (Dkt. Nos. 108-09). "It is well settled that

the return of a completed certificate of service by a Central Authority establishes prima facie

evidence that the Central Authority's service on Defendants was made in compliance with the

[Hague] convention" and with the foreign state's "internal laws." *Unite Nat'l Ret. Fund,* 643 F.

Supp. 2d at 334-35. Because the Certificates of Service filed by Plaintiffs provide prima facie

evidence that service on the Shanghai Huangzhou Defendants was proper, and no party has

sought to challenge such service, this Court finds that the Shanghai Huangzhou Defendants were

properly served with the Amended Complaint.

As the Shanghai Huangzhou Defendants failed to answer or otherwise respond to the

Amended Complaint within the 21 days allowed under Federal Rule 12(a)(1), Plaintiffs properly

requested a clerk's entry of default pursuant to Rule 55(a). (Dkt. No. 110). On November 15,

2019, Plaintiffs received a clerk's entry of default. (Dkt. No. 118). On December 20, 2019,

Plaintiffs moved for default judgment under Rule 55(b). Although Plaintiffs served the motion

for default judgment on the Shanghai Huangzhou Defendants, (*see* Dkt. No. 122 (certificate of

service)), the Shanghai Huangzhou Defendants have filed no response. Plaintiffs, therefore, appear to have met the procedural requirements for an order of default under Rule 55(b)(2) and Local Rule 55.2(b).

### C. Personal Jurisdiction

Plaintiffs' Motion, however, must be denied for the fundamental reason that the Amended Complaint fails to allege facts sufficient for this Court to determine that it may exercise personal jurisdiction over the Shanghai Huangzhou Defendants. While "a district court should *not* raise personal jurisdiction *sua sponte* when a defendant has appeared and consented, voluntarily or not, to the jurisdiction of the court," "when a defendant declines to appear . . . before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). While the Second Circuit has "left open the question 'whether a district court *must* investigate its personal jurisdiction over [a] defendant before entering a default judgment,'" a "default judgment is 'void' [within the meaning of Federal Rule 60(b)(4)] if it is rendered by a court that lacks jurisdiction over the parties." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133, 138 (2d Cir. 2011) (citations omitted); *see also Golden Ring Int'l, Inc. v. Cullen*, No. 6:18-cv-1244, 2019 WL 4015638, at *6, 2019 U.S. Dist. LEXIS 144444, at *15 (N.D.N.Y. Aug. 26, 2019) (noting that "even a full" default judgment is void if rendered by a court lacking jurisdiction and that, "in the context of default," a court may assess personal jurisdiction prior to granting a default judgment "even where personal jurisdiction has not been raised by the parties"); *Weitsman v. Levesque*, No. 3:17-cv-00727 , 2019 WL 7503022, at *2-5, 2019 U.S. Dist. LEXIS 225002, at *3-15 (N.D.N.Y. Jan. 11, 2019) (considering personal jurisdiction *sua sponte* on a motion for default judgment as to damages and, after finding lack of personal jurisdiction, vacating prior order granting motion for default judgment as to liability).

As the Shanghai Huangzhou Defendants have not appeared in this matter or consented to this Court's jurisdiction, this Court will follow the Second Circuit's guidance and "assure itself" that it may properly exercise jurisdiction over them.

"In the absence of a federal statute specifically directing otherwise, and subject to the limitations imposed by the United States Constitution, [the court] looks to the law of the forum state to determine whether a federal district court has personal jurisdiction over a foreign corporation." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). The exercise of personal jurisdiction must accord with the Due Process Clause of the United States Constitution. *Brown*, 814 F.3d at 625. Plaintiffs' allegations must provide "factual specificity necessary to confer jurisdiction." *Jazini ex rel. Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). Conclusory statements, including legal conclusions, without supporting facts are insufficient. *Id.* Importantly here, in assessing personal jurisdiction, "[e]ach defendant's contacts with the forum state must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). A "court may exercise two types of personal jurisdiction over a corporate defendant properly served with process": "general" and "specific." *Brown*, 814 F.3d at 624.

### 1.    General Jurisdiction

General jurisdiction subjects a defendant to suit on any claims, whether or not they arise from the defendant's dealings in the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945). "For a court to exercise general jurisdiction over a defendant," (1) "state law must authorize general jurisdiction"; and (2) "jurisdiction 'must comport with constitutional due process principles.'" *Reich v. Lopez*, 858 F.3d 55, 62-63 (2d Cir. 2017) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012)). In *Daimler AG v. Bauman*, the Supreme Court explained that "[a]side from 'an exceptional case,' . . . a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state

that is the company's formal place of incorporation or its principal place of business." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 & n.19 (2014)).

Here, the Amended Complaint sets forth no allegations suggesting that the Shanghai Huangzhou Defendants are incorporated, have their principal place of business, or are otherwise "at home" in New York; to the contrary, they appear to be Chinese companies with their principal places of business in Shanghai, China. (Dkt. No. 11, at 2; Dkt. Nos. 17, 108, 109). Therefore, this Court sees no basis to exercise general jurisdiction over the Shanghai Huangzhou Defendants.

### 2.     Specific Jurisdiction

"Specific [personal] jurisdiction exists when 'a [forum] exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on September 11, 2001)*, 714 F.3d 659, 673-74 (2d Cir. 2013) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996) (internal quotation omitted)). To evaluate whether it may exercise specific personal jurisdiction over a defendant, the Court first looks to whether it has a "statutory basis" for such jurisdiction under New York's long-arm statute, *Troma Entertainment*, 729 F.3d at 218, and then, "[i]f the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

#### a.     *New York's Statutory Requirements*

To determine whether the Court may exercise specific jurisdiction over Defendants, the Court first applies New York's long-arm statute, *Chloe*, 616 F.3d at 163, which provides, in relevant part:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

      (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

      (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a). The Court addresses each of these possible bases for personal jurisdiction in turn.

> **i.**     Transacting Business – N.Y. C.P.L.R. § 302(a)(1)

Under N.Y. C.P.L.R. § 302(a)(1), a court may exercise personal jurisdiction over a non-domicilary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." In determining whether personal jurisdiction may be exercised under this provision, "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Licci,* 673 F.3d at 60 (internal quotations omitted, alteration in original).

The Amended Complaint alleges that Defendants, as a group, "regularly do business in New York State and derive substantial revenue from goods sold and used in New York State and

in interstate and international commerce," and that they "supplied and sold goods and services to individuals and businesses located in New York State, including the Home Depot Store" at which the Heater was purchased. (Dkt. No. 11, at 4). These bare, conclusory allegations are insufficient to establish personal jurisdiction over the Shanghai Huangzhou Defendants pursuant to N.Y. C.P.L.R. § 302(a)(1), as "[p]ersonal jurisdiction under CPLR § 302(a)(1) . . . requires that '[e]ach defendant's contacts with the forum' be 'assessed individually.'" *Joint Stock Co. Channel One Russia Worldwide v. Informir LLC*, No. 16-cv-1318, 2018 WL 4681616, at *13, 2018 U.S. Dist. LEXIS 152237, at *36 (S.D.N.Y. Sept. 11, 2018) (quoting *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 326-27 (S.D.N.Y. 2017)) (allegations that the "Infomir Defendants" as a group manufactured, imported and sold equipment were insufficient to establish jurisdiction over a particular defendant), *report and recommendation adopted,* 2018 WL 4666069, 2018 U.S. Dist. LEXIS 167773 (S.D.N.Y. Sept. 28, 2018). Plaintiffs' allegations are too vague and generalized to allow the Court to conduct this necessary defendant-specific inquiry over whether the *Shanghai Huangzhou Defendants specifically* "transacted business" in New York within the meaning of this statute, or whether Plaintiffs' claim arose from those business transactions.

As a result, Plaintiffs' approach of treating Defendants as a collective, rather than addressing the Shanghai Huangzhou Defendants specifically, fails to provide the factual specificity necessary for the Court to assert jurisdiction over the Shanghai Huangzhou Defendants under N.Y. C.P.L.R. § 302(a)(1). For example, while an out-of-state party's shipping of a single product—such as the Heater that is the subject of this litigation—into New York "might well be sufficient, by itself, to subject [that party] to the jurisdiction of a New York Court under section 302(a)(1)," *Chloe*, 616 F.3d at 169-70, here, Plaintiffs have not alleged facts

demonstrating that either Shanghai Defendant was "the entity that shipped the machine—a fact that might have supported jurisdiction." *Bacon v. Fabio Perini S.p.A.*, 16-cv-1218, 2017 WL 4861489, at \*7, 2017 U.S. Dist. LEXIS 221602, at \*20-21 (N.D.N.Y. July 7, 2017). Nor have Plaintiffs otherwise alleged facts establishing that "a relevant [Shanghai Defendant] transaction took place in New York or that [the Shanghai Huangzhou Defendants] contracted to supply the relevant machine in New York." *Id.*

Thus, based on the allegations set forth in the Amended Complaint, Plaintiffs have failed to make a *prima facie* case that personal jurisdiction over the Shanghai Huangzhou Defendants is proper under N.Y. C.P.L.R. § 302(a)(1), and this Court cannot find that it may exercise such jurisdiction under that provision.

           **ii.**       Tortious Act Within Sate – N.Y. C.P.L.R. § 302(a)(2)

N.Y. C.P.L.R. § 302(a)(2), in relevant part, provides for jurisdiction when the claim arises from a defendant's "commi[ssion of] a tortious act within the state." Typically, a "defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999); *see also Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 803 (S.D.N.Y. 2015) (remarking that "the Second Circuit continues to adhere to the traditional, stricter rule . . . requiring the defendant to physically commit the tortious act within New York"), *aff'd*, 660 F. App'x 43 (2d Cir. 2016). As the Amended Complaint does not allege that the Shanghai Huangzhou Defendants were ever physically present in New York or committed any tortious act within New York, the Court may not exercise jurisdiction over the Shanghai Huangzhou Defendants pursuant to N.Y. C.P.L.R. § 302(a)(2).

> iii.    Injury Within State – N.Y. C.P.L.R. § 302(a)(3)

N.Y. C.P.L.R. § 302(a)(3)(i) establishes that a court "may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . if he . . . regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state." Under N.Y. C.P.L.R. § 302(a)(3)(ii), a court "may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Plaintiffs' allegations fall short of establishing personal jurisdiction under these provisions as well.

As noted previously, Plaintiffs' Amended Complaint consistently refers to the actions of "Defendants" as a whole, rather than the Shanghai Huangzhou Defendants specifically. These allegations establish, at most, that the Shanghai Huangzhou Defendants played some role in the allegedly defective and negligent design, manufacturing, assembly, marketing or sale of the Heater that caused Plaintiffs' injuries in New York, but they provide no information as to what that role was. The Amended Complaint sets forth no allegations through which the Court can evaluate what specific behavior the Shanghai Huangzhou Defendants engaged in with respect to the Heater, or whether they reasonably should have expected that behavior to have consequences in New York. Nor does it provide facts regarding the Shanghai Huangzhou Defendants' relationships with other entities involved in the Heater's production and sale—such as the other Defendants—through which the Court could draw inferences about whether they reasonably should have expected the effects of their actions to reach New York. *Compare, e.g., Kernan v.*

*Kurz-Hastings, Inc.*, 175 F.3d 236, 238 (2d Cir. 1999) (finding jurisdiction under N.Y. C.P.L.R. § 302(a)(3) over Japanese manufacturer of an injury-causing machine was proper where the manufacturer's distributor in Pennsylvania sold the machine to plaintiff's employer in New York, as the manufacturer "did indeed attempt to serve the New York market, even if it did so indirectly"); *Darrow v. Hetronic Deutschland*, 119 A.D.3d 1142, 1144 (3d Dep't 2014) (concluding that the court could exercise personal jurisdiction where "[t]he record reflects that the defendant maintained an exclusive agreement with [its distributor]," which "affected distribution to certain states . . . through a network of regional distributors, one of which was designated to serve the New York market" and there was evidence of "defendant's awareness of this network"); *Halas v. Dick's Sporting Goods*, 105 A.D.3d 1411, 1412 (4th Dep't 2013) (concluding that "defendant should have reasonably expected that its negligence would have consequences in individual states, including New York, because its [exclusive] distributor targets the nationwide market" and has retail locations "in 36 states including New York").

As noted previously, Plaintiffs' only allegations addressing the Shanghai Huangzhou Defendants' connections to New York allege that *all* Defendants, as a group, "regularly do business in New York State and derive substantial revenue from goods sold and used in New York State and in interstate and international commerce," and that they "supplied and sold goods and services to individuals and businesses located in New York State, including the Home Depot Store" at which the Heater was purchased. (Dkt. No. 11, at 4). Such conclusory statements, which are essentially just "restatement[s] . . . of the [relevant] legal standard[s]," are insufficient to establish jurisdiction. *Jazini*, 148 F.3d at 184-85. Beyond these conclusory statements, the Amended Complaint alleges no facts from which the Court may find that either of the Shanghai Huangzhou Defendants "regularly does or solicits business, or engages in any other persistent

16

course of conduct" in New York State. It also alleges no non-conclusory facts from which the

Court can conclude that the portion of the Shanghai Huangzhou Defendants' revenue derived

from New York State, interstate or international commerce is "substantial" in any sense, as

required to establish jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(i). *See, e.g., Bacon*, 2017 WL

4861489, at *7, 2017 U.S. Dist. LEXIS 221602, at *19-20 ("Although '[s]ubstantial revenue can

be measured in an absolute or relative sense or by qualitative or quantitative means' . . . these

facts are insufficient to establish personal jurisdiction because the record lacks specifics

regarding the nature or value of international sales." (quoting *Litton v. Avomex*, No. 08-cv-1340,

2010 WL 160121, at *7, 2010 U.S. Dist. LEXIS 2881, at *21 (N.D.N.Y. Jan. 14, 2010)));

*Deitrick v. Gypsy Guitar Corp.*, No. 16-cv-616, 2016 WL 7494881, at *7, 2016 U.S. Dist.

LEXIS 179481, at *19 (S.D.N.Y. Dec. 28, 2016) ("Plaintiff's mere conclusory statement [that

the defendant derives substantial revenue from interstate or international commerce]—tracking

the language of the required showing—is insufficient to meet his burden.").

 Thus, based on the allegations set forth in the Amended Complaint, Plaintiffs have failed

to make a prima facie case that personal jurisdiction over the Shanghai Huangzhou Defendants is

proper under N.Y. C.P.L.R. § 302(a)(3), and this Court cannot find that it may exercise such

jurisdiction under that provision.

   **iv.** Owning, Using or Possessing Property Within State – N.Y.
    C.P.L.R. § 302(a)(4)

 A "court may exercise jurisdiction over a defendant if he owns, uses, or possesses any

property within New York that serves as the basis for plaintiffs' cause of action." *Brown v.*

*Showtime Networks, Inc.*, 394 F.Supp.3d 418, 436 (S.D.N.Y. 2019). Section 302(a)(4) requires

that Plaintiff establish "a relationship between the property and the cause of action sued upon."

*Stroud*, 91 F.Supp.3d at 390 (quoting *Lancaster v. Colonial Motor Freight Line, Inc.*, 177

A.D.2d 152, 159 (1st Dep't 1992)). As the Amended Complaint does not allege that the

Shanghai Huangzhou Defendants own, use or possess any property within New York that serves

as the basis for Plaintiffs' cause of action, the Court may not exercise jurisdiction over the

Shanghai Huangzhou Defendants pursuant to N.Y. C.P.L.R. § 302(a)(4).

**b.**     *Due Process Requirements*

Even assuming *arguendo* that this Court has personal jurisdiction over the Shanghai

Huangzhou Defendants pursuant to New York's long-arm statute, Plaintiffs have failed to allege

facts sufficient to establish that this Court's exercise of personal jurisdiction over the Shanghai

Huangzhou Defendants is consistent with due process. "Due process permits a court to exercise

personal jurisdiction over a non-resident where the maintenance of the suit would not 'offend

traditional notions of fair play and substantial justice.'" *Porina v. Marward Shipping Co.*, 521

F.3d 122, 127 (2d Cir. 2008) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). This inquiry requires "a

two-step analysis." *Id.* (citing *Metro. Life*, 84 F.3d at 567-68). First, the Court must decide

whether the Shanghai Huangzhou Defendants "ha[ve] sufficient minimum contacts with the

forum to justify the court's exercise of personal jurisdiction." *Id.* The minimum contacts inquiry

"focuses on the relationship among the defendant, the forum and the litigation." *Walden v. Foire*,

571 U.S. 277, 283-84 (2014) (internal quotations omitted). To determine if a defendant has

sufficient contacts with the forum to justify the Court's exercise of specific jurisdiction, "the

defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* If

the Shanghai Huangzhou Defendants have "sufficient minimum contacts," the Court proceeds to

the second step and considers "whether the assertion of personal jurisdiction 'is reasonable under

the circumstances of the particular case.'" *Porina*, 521 F.3d at 127 (2d Cir. 2008) (quoting

*Metro. Life*, 84 F.3d at 568).

This Court has previously discussed the standards for evaluating the "minimum contacts" of a foreign manufacturer of a product that caused harm in New York. *See Bacon*, 2017 WL 4861489, at *9-10, 2017 U.S. Dist. LEXIS 221602, at *21-28. In *Bacon*, this Court explained that, as set forth in Justice Breyer's concurrence in *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011), the Supreme Court "has strongly suggested that a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place." *Id.* at 888-89 (citing, *inter alia*, *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 111 (1987) (opinion of O'Connor, J.)). This Court went on to explain that Supreme Court and Second Circuit precedent since *Nicastro* have emphasized the importance of purposeful "State-specific targeting, regular in-State sales, or planned market exposure to New York State" in establishing the minimum contacts necessary for personal jurisdiction. *See Bacon*, 2017 WL 4861489, at *10, 2017 U.S. Dist. LEXIS 221602, at *28. Based on these principles, this Court found that a foreign manufacturer's exclusive marketing and distribution agreement with its Pennsylvania subsidiary, as well as the foreign entity's two direct sales in New York (which were distinct from the sale by the foreign entity's Pennsylvania subsidiary that gave rise to the plaintiff's claims) were insufficient to establish personal jurisdiction over the entity. *Id*; *see also, e.g.*, *Richards v. Johnson & Johnson, Inc.*, No. 17-cv-00178, 2018 WL 4214357, at *8, 2018 U.S. Dist. LEXIS 152016, at *22-23 (N.D.N.Y. March 30, 2018) (finding personal jurisdiction over manufacturer lacking where manufacturer's "only alleged contact with New York giving rise to [the plaintiff's] injury was the presence in New York of the allegedly defective [product] . . . which incorporated component parts supplied by"

the manufacturer, and there was "no allegation that [the manufacturer] had regular sales in New York, directed its products toward New York, or catered to the New York market")*.*

Here, the allegations regarding the Shanghai Huangzhou Defendants' contacts with New York are sparser and less developed than those this Court analyzed in *Bacon* and *Richards*. Indeed, as discussed previously, aside from bare, conclusory allegations that reference all Defendants as a group, the Amended Complaint says nothing about what the Shanghai Huangzhou Defendants' role was in the production and sale of the Heater at issue this litigation, and in particular, whether their conduct suggested purposeful targeting of the New York market. Nor does the Amended Complaint provide any other information about the Shanghai Huangzhou Defendants' contacts with New York from which the Court can evaluate whether their conduct meets the Supreme Court's "minimum contacts" standard.

Because Plaintiffs have failed to allege that the Shanghai Huangzhou Defendants have minimum contacts with New York sufficient to satisfy due process, the Court need not proceed to the second step of the analysis concerning the reasonableness of exercising jurisdiction over them. *Metro. Life*, 84 F.3d at 568 ("A reviewing court must first examine the defendant's contacts with the forum. If the same do not exist in sufficient abundance, that is, if the constitutionally necessary first-tier minimum is lacking, the inquiry ends." (quoting *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990))); *see also Bank Brussels*, 305 F.3d at 129 ("The import of the 'reasonableness' inquiry varies inversely with the strength of the 'minimum contacts' showing—a strong (or weak) showing by the plaintiff on 'minimum contacts' reduces (or increases) the weight given to 'reasonableness.'"). As such, on these facts, this Court concludes that it cannot find that the exercise of personal jurisdiction over the Shanghai Huangzhou Defendants conforms to due process.

3.      **Denial with Leave to Renew**

Because the Amended Complaint fails to allege facts sufficient to support this Court's

exercise of personal jurisdiction over the Shanghai Huangzhou Defendants, the Court denies the

Motion. The Court notes, however, that in determining whether it has personal jurisdiction over

these Defendants, the Court may consider evidence outside of the complaint. *See Vasquez v.*

*Hong Kong and Shanghai Banking Corp., Ltd.,* No. 18-cv-1876, 2020 WL 4586729, at *1 n.1,

2020 U.S. Dist. LEXIS 142607, at *2 n.1 (S.D.N.Y. Aug. 10, 2020). The Court therefore denies

the Motion without prejudice to renewal. Plaintiffs may renew their motion for default judgment

by filing, within thirty days, evidence and briefing in support of this Court's personal jurisdiction

over the Shanghai Huangzhou Defendants.

D.      **Liability**

Because the Motion is denied for lack of personal jurisdiction, the Court declines to

decide whether Plaintiffs have pled facts sufficient to state a claim against the Shanghai

Huangzhou Defendants, as would be necessary for the Court to enter a default judgment.

However, the Court notes that, as with its jurisdictional allegations, the Amended Complaint's

substantive allegations simply refer to "Defendants" as a group, without specifying any actions

or omissions by the Shanghai Huangzhou Defendants, including their role in the allegedly

tortious design, manufacture, assembly, marketing and sale of the Heater. (Dkt. No. 11, at 6-12).

This failure to allege particularized facts regarding the Shanghai Huangzhou Defendants'

conduct would likely render it difficult for the Court to find that Plaintiffs have pled facts

sufficient to state a claim against the Shanghai Huangzhou Defendants, were the Court to reach

that question. *See Howard v. Municipal Credit Union*, No. 05-cv-7488, 2008 WL 782760, at

*12, 2008 U.S. Dist. LEXIS 124085, at *39-40 (S.D.N.Y. Jan. 25, 2008) ("While Rule 8 does

not prohibit 'collective allegations' against multiple defendants, it does require that the

allegations be 'sufficient to put each [d]efendant on notice of what they allegedly did or did not do.'" (citations omitted)), *report and recommendation adopted* 2008 WL 782760, 2008 U.S. Dist. LEXIS 23448 (S.D.N.Y. March 25, 2008). To the extent Plaintiffs seek to renew their motion for default judgment, they should address which cause of action or causes of action in the Amended Complaint are sufficiently pled to state a claim against the Shanghai Huangzhou defendants.

To the extent the Plaintiffs seek to renew their motion for default judgment, they should also address the issue of damages. Plaintiffs have not specified the amount of damages they seek, nor have they submitted affidavits or other documentary evidence from which the Court could determine an appropriate damages award. "[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup*, 973 F.2d at 158). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Id.* (citing Fed. R. Civ. P. 55(b)(2)).

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Motion for Default Judgment (Dkt. No. 121) is **DENIED** without prejudice; and it is further

**ORDERED** that Plaintiffs may renew the Motion for Default Judgment by filing, within thirty days of the date of this Order, evidence and a memorandum of law addressing whether this Court has personal jurisdiction over the Shanghai Huangzhou Defendants; and it is further

**ORDERED** that if Plaintiffs renew the Motion for Default Judgment, the memorandum of law should also address whether the Amended Complaint sufficiently states a cause of action against the Shanghai Huangzhou Defendants for the issuance of a default judgment, as well as the issue of damages; and it is further

**ORDERED** that if Plaintiffs elect not to renew the Motion for Default Judgment, Plaintiffs are directed to provide the Court with a status report within thirty days of the date of this Order, addressing what action Plaintiffs seek to take regarding the Shanghai Huangzhou Defendants.

**IT IS SO ORDERED.**

Dated: September 3, 2020
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge

23