**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MEGHAN HUNTER, Individually and as Parent and
Natural Guardian of MH; and MH;

 5:17-cv-00052 (BKS/TWD)

                        Plaintiffs,

v.

SHANGHAI HUANGZHOU ELECTRICAL APPLIANCE
MANUFACTURING CO., LTD.; SHANGHAI
HUANGZHOU INDUSTRY CO., LTD.; QUALITY
CRAFT HOME DÉCOR, INC.; QUALITY CRAFT
MERGERCO; QUALITY CRAFT, LTD.; QCIL
INTERNATIONAL, INC.; HOME DEPOT, USA, INC.;
THE HOME DEPOT, INC.; and HD DEVELOPMENT OF
MARYLAND, INC.,

                        Defendants.

---

**Appearances:**

*For Plaintiffs:*
Timothy P. Murphy
Ryan M. Poplawski
Hancock Estabrook, LLP
1800 AXA Tower I – 100 Madison Street
Syracuse, New York 13202

*For Defendants Quality Craft Home Décor, Inc., Quality Craft Mergerco, Quality Craft, Ltd.,*
*and QCIL International, Inc. (the "Quality Craft Defendants"):*
Marc H. Goldberg
Ryan A. Lema
Phillips Lytle, LLP
OMNI Plaza, 30 South Pearl Street
Albany, New York 12207

*For Defendants Home Depot, U.S.A., Inc., The Home Depot, Inc., and HD Development of*
*Maryland, Inc. (the "Home Depot Defendants"):*
Steven W. Williams
Smith, Sovik, Kendrick & Sugnet, P.C.
250 South Clinton Street, Suite 600
Syracuse, New York 13202

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Currently before the Court is a renewed motion for default judgment under Rule 55(b) of the Federal Rules of Civil Procedure and Rule 55.2 of the Local Rules of Practice for the United States District Court for the Northern District of New York brought by Plaintiffs Meghan Hunter, individually and as parent and natural guardian of M.H., and M.H. (collectively, "Plaintiffs") against Defendants Shanghai Huangzhou Electrical Appliance Manufacturing Co., Ltd. ("Shanghai Huangzhou Electrical") and Shanghai Huangzhou Industry Co., Ltd. ("Shanghai Huangzhou Industry," and together with Shanghai Huangzhou Electrical, the "Shanghai Huangzhou Defendants") (Dkt. No. 151). The Home Depot and Quality Craft Defendants have filed partial oppositions to Plaintiffs' renewed motion. (Dkt. Nos. 156-59). For the reasons set forth below, Plaintiffs' motion is denied without prejudice.

## II.      RELEVANT PROCEDURAL BACKGROUND[1]

On December 20, 2019, after obtaining a clerk's entry of default against the Shanghai Huangzhou Defendants for their "failure to appear, plead or otherwise defend" the action, Plaintiffs moved for default judgment against the Shanghai Huangzhou Defendants pursuant to Federal Rule 55(b) and Local Rule 55.2. (Dkt. No. 121). After reviewing Plaintiffs' motion, the Court found that the Shanghai Huangzhou Defendants had been properly served with the Amended Complaint and had failed to timely answer or otherwise respond, and that Plaintiffs otherwise met the procedural requirements to obtain a default judgment. *Hunter*, 2020 WL

---

[1] The Court assumes familiarity with the facts and procedural history set forth in the Court's decision denying Plaintiffs' prior motion for default judgment. *Hunter v. Shanghai Huangzhou Electrical Appliance Man. Co., Ltd.*, No. 17-cv-00052, 2020 WL 5258313, at *1-3, 2020 U.S. Dist. LEXIS 161142, at *2-7 (N.D.N.Y. Sept. 3, 2020).

5258313, at *4, 2020 U.S. Dist. LEXIS 161142, at *9-11. However, the Court nonetheless

denied the motion "for the fundamental reason that the Amended Complaint fails to allege facts

sufficient for this Court to determine that it may exercise personal jurisdiction over the Shanghai

Huangzhou Defendants." *Id.* at *5-9, 2020 U.S. Dist. LEXIS 161142, at *11-29 (analyzing

personal jurisdiction over the Shanghai Huangzhou Defendants under New York's long-arm

statute and federal due process standards, and finding that the Amended Complaint failed to

allege any basis for personal jurisdiction over these Defendants). The Court also expressed

concern about whether the Amended Complaint sufficiently stated a claim against the Shanghai

Huangzhou Defendants as required for a default judgment, observing that:

> [A]s with its jurisdictional allegations, the Amended Complaint's substantive allegations
> simply refer to "Defendants" as a group, without specifying any actions or omissions by
> the Shanghai Huangzhou Defendants, including their role in the allegedly tortious design,
> manufacture, assembly, marketing and sale of the Heater. (Dkt. No. 11, at 6-12). This
> failure to allege particularized facts regarding the Shanghai Huangzhou Defendants'
> conduct would likely render it difficult for the Court to find that Plaintiffs have pled facts
> sufficient to state a claim against the Shanghai Huangzhou Defendants, were the Court to
> reach that question.

*Id.* at *10, 2020 U.S. Dist. LEXIS 161142, at *29. Finally, the Court noted that "Plaintiffs have

not specified the amount of damages they seek, nor have they submitted affidavits or other

documentary evidence from which the Court could determine an appropriate damages award."

*Id.*, 2020 U.S. Dist. LEXIS 161142, at *30.

Observing that the "Court may consider evidence outside of the Complaint" in assessing

whether it may exercise personal jurisdiction over the Shanghai Huangzhou Defendants, the

Court offered Plaintiffs the opportunity to "renew their motion for default judgment by filing,

within thirty days, evidence and briefing in support of this Court's personal jurisdiction over the

Shanghai Huangzhou Defendants." *Id.* at *9, 2020 U.S. Dist. LEXIS 161142, at *28-29. The

Court further instructed that, if they chose to renew their motion, Plaintiffs' briefing should also

"address which cause of action or causes of action in the Amended Complaint are sufficiently pled to state a claim against the Shanghai Huangzhou Defendants," as well as "the issue of damages." *Id.* at *10, 2020 U.S. Dist. LEXIS 161142, at *30.

On October 1, 2020, pursuant to the Court's instructions, Plaintiffs renewed their motion for default judgment by submitting a memorandum of law arguing that the Court may exercise personal jurisdiction over the Shanghai Huangzhou Defendants, along with supporting evidence. (Dkt. No. 151). Plaintiffs' submission, however, did not include argument regarding the sufficiency of the amended complaint or Plaintiffs' position regarding damages.[2]

On November 9, 2020, after reviewing Plaintiffs' renewed motion, the Court issued a text order stating that, based on Plaintiff's proffered evidence, "the Court cannot determine the basis of personal jurisdiction, or the basis of liability, as to each individual defendant"[3] and ordering that "Plaintiffs may supplement their motion with a letter brief and evidence by November 30, 2020." (Dkt. No. 162). On November 30, 2020, Plaintiffs submitted a supplemental attorney

---

[2] The record reflects that Plaintiffs served their original motion for default judgment on the Shanghai Huangzhou Defendants via Federal Express International Priority Mail on December 23, 2019, (*see* Dkt. No. 122 (certificate of service)), but the Shanghai Huangzhou Defendants filed no response. Plaintiffs have not filed any certificate of service affirming whether they served the Shanghai Huangzhou Defendants with notice of their renewed motion. However, because the Shanghai Huangzhou Defendants have never appeared in this action at any time, Federal Rule 55 does not require that they be served with notice of the motion. *See, e.g.*, *Bobrow Greenapple & Skolnik v. Woods*, 865 F.2d 43, 44 (2d Cir. 1989) ("Neither Fed. R. Civ. P. 55(b)(2) nor [the relevant local rule] requires that, before judgment can be entered, the clerk's certificate [of default] be served upon an opposing party who has not appeared. Fed. R. Civ. P. 77(d) expressly exempts the clerk from the obligation to serve notice of entry of orders on a party 'in default for failure to appear.'"); *Off-White LLC v. 5HK5584*, No. 19-cv-672, 2020 WL 3050552, at *1 n.2, 2020 U.S. Dist. LEXIS 100028, at *4 n.2 (S.D.N.Y. June 8, 2020) (noting that "even though Plaintiff was unable to serve its motion for a default judgment on [a defendant] . . . the Court granted a default judgment against them. In doing so, the Court noted that 'if a party hasn't appeared, the Federal Rules don't require that a default judgment be served on [a party] at all'" (citation omitted)); *New Energy Works of Rochester, Inc. v. Matsunoki Grp., Inc.*, No. 10-cv-6445, 2012 WL 130269, at *1, 2012 U.S. Dist. LEXIS 5073, at *3 (W.D.N.Y. Jan. 17, 2012) ("[O]nly when the defaulting party has appeared in the action must the non-defaulting party provide advance notice of its motion for default judgment."). Therefore, the Court may rule on Plaintiffs' renewed motion regardless of whether Plaintiffs have provided notice of it to the Shanghai Huangzhou Defendants.

[3] The Court explained that it could not, "for example, determine what tortious act Plaintiffs allege each individual defendant committed, or whether the . . . references to 'Shanghai Huangzhou Electrical' [in the documentary evidence submitted] refer to Defendant Shanghai Huangzhou Electrical Appliance Manufacturing Co." (Dkt. No. 162).

declaration with additional evidence responsive to the Court's text order. (Dkt. No. 163).

## III.   DISCUSSION

### A.   Personal Jurisdiction

In their renewed motion, Plaintiffs argue that the Court may exercise specific personal jurisdiction over the Shanghai Huangzhou Defendants. (Dkt. No. 151). "Specific [personal] jurisdiction exists when 'a [forum] exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on September 11, 2001)*, 714 F.3d 659, 673-74 (2d Cir. 2013) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996) (internal quotation omitted)). To evaluate whether it may exercise specific personal jurisdiction over a defendant, the Court first looks to whether it has a "statutory basis" for such jurisdiction under New York's long-arm statute, *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013), and then, "[i]f the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). In evaluating whether it has personal jurisdiction over the Shanghai Huangzhou Defendants, the Court may consider evidence outside of the complaint. *See Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, No. 18-cv-1876, 2020 WL 4586729, at *1 n.1, 2020 U.S. Dist. LEXIS 142607, at *2 n.1 (S.D.N.Y. Aug. 10, 2020).

Plaintiffs assert that N.Y. C.P.L.R. § 302(a)(3)(ii) gives the Court a statutory basis for specific personal jurisdiction over the Shanghai Huangzhou Defendants. (Dkt. No. 151, at 2). N.Y. C.P.L.R. § 302(a)(3)(ii) provides that a court "may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should

reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." With their initial renewed motion, Plaintiffs provided the following evidence in support of their argument: (1) an affirmation from Joanne Devost, Defendant Quality Craft, Ltd.'s Vice President of Operations, stating that, in 2010, the heater at issue in this litigation (the "Heater") was manufactured by "Shanghai Huangzhou Electrical," imported by Defendant Quality Craft Home Décor, Inc., and re-sold to the Home Depot Defendants, (Dkt. No. 151-1, at 3-18); (2) a sales history detail report from Defendant Quality Craft Home Décor, Inc. reflecting that, in 2010, Defendant Quality Craft Home Décor, Inc. sold more than 50,000 SOQC111-MBK heater units to the Home Depot Defendants, earning a total sales revenue of $1,783,094.53, (*id.* at 19-23); (3) an executive summary of one of Plaintiffs' expert reports, which identifies specific alleged design and manufacturing defects with the Heater, (*id.* at 24-27); (4) purchase orders and associated shipping documents regarding 5 shipments of 730 SOQC111-MBK units (or 3,650 units total) from the Shanghai Huangzhou Defendants[4] to a Home Depot distribution center in Montgomery, New York between August and October of 2010, (*id.* at 28-50); and (5) a page from the website of Shanghai Huangzhou Industry, which notes, among other things, that Shanghai Huangzhou Industry manufactures electric heaters and exports its products "all over the world," including to customers like "Home Depot, Menards, Sam's Club, Wal-mart, Target, etc.," and that it has "CSA and cSAus approval for all [its]products for USA, Canada." (*Id.* at 51-52).

With their supplemental declaration submitted in response to the Court's November 9 text order, Plaintiffs provided the following additional evidence: (1) excerpts of a transcript from

---

[4] The purchase orders and profit margin sheets, which appear to have been prepared by the Quality Craft Defendants, list the supplier as "Shanghai Huangzhou Electrical"; however, the packing lists and commercial invoices identify the shipper as "Shanghai Huangzhou Industry," and the forwarder's cargo receipts identify the shipper as "Shanghai Huangzhou Industry Co., Ltd." (Dkt. No. 151-1, at 28-50).

Ms. Devost's deposition, in which she identifies "Shanghai Huangzhou Electrical" as the manufacturer of the Heater, (Dkt. No. 163, at 4-11); and (2) the Quality Craft Defendants' responses to Plaintiffs' interrogatories, which identify "Shanghai Huangzhou Electrical Appliance Manufacturing Co. Ltd." as the entity responsible for designing, manufacturing, assembling and packaging the Heater, (*id.* at 24-25). Plaintiffs also re-submitted the Devost affirmation that they had submitted with their renewed motion, (*id.* at 12-18), and shipping records similar to those submitted with their renewed motion, (*id.* at 32-95).

The evidence Plaintiffs submit establishes that the Court may exercise personal jurisdiction over both Shanghai Huangzhou Defendants. The Devost affirmation and deposition transcript identify "Shanghai Huangzhou Electrical" as the manufacturer of the Heater, and the Quality Craft Defendants' interrogatory responses confirm that that phrase is meant to refer to the same Shanghai Huangzhou Electrical that is a Defendant in this litigation. (Dkt. No. 151-1, at 5; Dkt. No. 163, at 8-11, 14, 24-25). Additionally, the shipping documents Plaintiffs rely on demonstrate that, in 2010, Shanghai Huangzhou Industry shipped large quantities of SOQC111-MBK heater units to New York for re-sale by the Quality Craft Defendants, and the Devost affirmation confirms that the Heater itself was one of those units. (Dkt. No. 151-1, at 5, 28-50; Dkt. No. 163, at 14, 32-95). Plaintiffs' Amended Complaint alleges that the Heater was defective and that those defects caused M.H.'s injuries. (Dkt. No. 11). Thus, the Amended Complaint and documentary evidence together establish that both Shanghai Huangzhou Defendants "commit[ed] a tortious act without the state causing injury to person or property within the state," N.Y. C.P.L.R. § 302(a)(3)(ii)—Shanghai Huangzhou Electrical by manufacturing an allegedly defective Heater, and Shanghai Huangzhou Industry by arranging for that Heater to be shipped to New York, where it allegedly caused Plaintiffs' injuries.

The evidence also establishes that both Shanghai Huangzhou Defendants "expect[ed] or should reasonably [have] expect[ed] [any defects in the Heater] to have consequences in" New York. N.Y. C.P.L.R. § 302(a)(3). The shipping documents Plaintiffs rely on make clear that Shanghai Huangzhou Industry purposefully shipped the Heater, and thousands of units like it, directly to New York for sale, establishing its awareness that any defects in those products could have consequences there. (Dkt. No. 151-1, at 28-50; Dkt. No. 163, at 14, 32-95). Furthermore, the fact that Shanghai Huangzhou Electrical gave thousands of units of heaters to its distributor for shipment directly into New York gives the Court a strong basis to infer that Shanghai Huangzhou Electrical reasonably should have expected the consequences of any manufacturing defects in the Heater to touch New York. *See, e.g., Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 238 (2d Cir. 1999) (finding jurisdiction under N.Y. C.P.L.R. § 302(a)(3) over Japanese manufacturer of an injury-causing machine was proper where the manufacturer's distributor in Pennsylvania sold the machine to the plaintiff's employer in New York, as the manufacturer "did indeed attempt to serve the New York market, even if it did so indirectly"); *Darrow v. Hetronic Deutschland*, 119 A.D.3d 1142, 1144 (3d Dep't 2014) (concluding that the court could exercise personal jurisdiction where "[t]he record reflects that the defendant maintained an exclusive agreement with [its distributor]," which "affected distribution to certain states . . . through a network of regional distributors, one of which was designated to serve the New York market" and there was evidence of "defendant's awareness of this network"); *Halas v. Dick's Sporting Goods*, 105 A.D.3d 1411, 1412 (4th Dep't 2013) (concluding that "defendant should have reasonably expected that its negligence would have consequences in individual states, including New York, because its [exclusive] distributor targets the nationwide market" and has retail locations "in 36 states including New York").

As to the "substantial revenue" requirement of N.Y. C.P.L.R. § 302(a)(3), the sales history report Plaintiffs rely on reflects that, during the year in which the Heater was manufactured, Defendant Quality Craft Home Décor, Inc. re-sold to Home Depot more than 50,000 SOQC111-MBK heater units after receiving them from Shanghai Huangzhou Industry, earning total sales revenue of $1,783,094.53. (Dkt. No. 151-1, at 19-23). The shipping documents Plaintiffs submit further establish that, for each sale of approximately $26,000 that the Quality Craft Defendants made to the Home Depot Defendants, approximately $21,000 was ultimately paid to the "supplier" of the SOQC111-MBK units. (*Id.* at 28-50). The record does not specify whether the "supplier" refers to one or both of the Shanghai Huangzhou Defendants, nor does it specifically establish the total revenue either Defendant earned from sales of SOQC111-MBK heater units in 2010. However, it is reasonable to infer that the "supplier cost" reflects revenue shared in some way among both Shanghai Huangzhou Electrical (as the manufacturer) and Shanghai Huangzhou Industry (as the distributor) and drawing that inference, the evidence demonstrates that the Shanghai Huangzhou Defendants derived a significant amount of revenue from international sales of a single product to a single client in a single year.

Beyond these particular sales, Shanghai Huangzhou Industry's website states that it exports its products "all over the world," including to large companies based outside of China like "Home Depot, Menards, Sam's Club, Wal-mart, Target, etc.," and that it has "CSA and cSAus approval for all [its]products for USA, Canada." (*Id.* at 52). The "substantial revenue" requirement "is intended to exclude non-domicilaries whose business operations are of a local character." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997) (citing Report of the Administrative Board of the Judicial Conference of the State of New York for the Judicial Year July 1, 1965 through June 30, 1966, Legislative Document (1967) No. 90). Therefore, Shanghai

Huangzhou Industry's own representations that it derives revenue by conducting business "all over the world," including with large multinational clients, allow the Court to infer that it derives substantial revenue from international commerce. *See, e.g., Rx USA Intern., Inc. v. Superior Pharm. Co.*, No. 04-cv-5074, 2005 WL 3333843, at *5-6, 2005 U.S. Dist. LEXIS 34255, at *15-16 (E.D.N.Y. Dec. 7, 2005) (concluding that representations on the defendants' websites stating that the defendants conducted business with multinational and out-of-state clients were sufficient to establish "substantial revenue" requirement); *Local 875 I.B.T. Pension Fund v. Pollack*, 992 F. Supp. 545, 557 (E.D.N.Y. 1998) (explaining that the defendant's brochure describing its "participation in major financial markets across the globe" established substantial revenue requirement); *Marine Midland Bank v. Keplinger & Assocs., Inc.*, 488 F. Supp. 699, 703-04 (S.D.N.Y. 1980) (concluding that the defendant's brochure "boast[ing] of national and international prominence in the geological area" and "numerous corporate clients throughout the United States and the world," combined with evidence reflecting that defendant earned over $300,000 in revenue from Plaintiff alone, made "apparent that [defendant] derives substantial revenues from interstate and international commerce"). Furthermore, while the website refers to Shanghai Huangzhou Industry as the "manufacturer" of the products it exports, (Dkt. No. 151-1, at 52), when that website is read together with the other record evidence demonstrating that Shanghai Huangzhou Industry was actually a distributor for heater products manufactured by Shanghai Huangzhou Electrical, it is reasonable to infer that *both* Shanghai Huangzhou Defendants conduct international commerce together as a cohesive enterprise, and thus that both derive significant revenue from the international transactions inherent to their business.

Viewed collectively, then, evidence of the significant revenue the Shanghai Huangzhou Defendants earned from sales of SOQC111-MBK heater units to the Quality Craft Defendants

alone, combined with evidence of the international nature of the Shanghai Huangzhou Defendants' business more generally, meets the "substantial revenue" requirement of N.Y. C.P.L.R. § 302(a)(3). Therefore, the Court finds that all the elements necessary to exercise personal jurisdiction over the Shanghai Huangzhou Defendants under N.Y. C.P.L.R. § 302(a)(3)(ii) are met here.

Furthermore, based on the evidence Plaintiffs present, the exercise of personal jurisdiction over the Shanghai Huangzhou Defendants is consistent with federal due process standards. As explained in this Court's previous decision denying Plaintiffs' motion for a default judgment, "Due process permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not 'offend traditional notions of fair play and substantial justice.'" *Hunter*, 2020 WL 5258313, at *8, 2020 U.S. Dist. LEXIS 161142, at *24 (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008)). Here, as discussed, the evidence Plaintiffs have put forth shows that, in 2010, the Shanghai Huangzhou Defendants shipped thousands of SOQC111-MBK heater units, including the Heater itself, directly into New York. (Dkt. No. 151-1, at 5, 28-50). This pattern of sales goes well beyond "a single sale of a product in a State" and shows the precise type of purposeful "State-specific targeting, regular in-State sales, or planned market exposure to New York State" that the Supreme Court has held justifies the exercise of personal jurisdiction. *See Bacon v. Fabio Perini S.p.A.*, No. 16-cv-1218, 2017 WL 4861489, at *10, 2017 U.S. Dist. LEXIS 221602, at *28 (N.D.N.Y. July 7, 2017). Furthermore, given this significant and purposeful targeting of the New York market, and in the absence of any argument by the Shanghai Huangzhou Defendants, the Court perceives no reason why exercising personal jurisdiction over the Shanghai Huangzhou Defendants would be unreasonable under the circumstances of this case. Therefore, the Court

finds that it may properly exercise personal jurisdiction over the Shanghai Huangzhou Defendants.

### B.    Liability

Having determined that it may exercise personal jurisdiction over the Shanghai Huangzhou Defendants, the Court turns to the question of whether the Court should enter a default judgment. By failing to appear in this action or respond to Plaintiffs' Amended Complaint, the Shanghai Huangzhou Defendants are deemed to have admitted the factual allegations in the Amended Complaint with respect to liability (as distinct from damages). *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."). However, the ultimate decision as to whether to grant a default judgment is "left to the sound discretion of [the] district court." *See Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)). Even where a defendant has admitted all well-pleaded facts in the complaint by virtue of default, a District Court "need not agree that the alleged facts constitute a valid cause of action," and may decline to enter a default judgment on that ground. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Au Bon Pain Corp v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). Indeed, the Second Circuit has "suggested that, prior to entering default judgment, a district court is 'required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law.'" *Id.* (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). Furthermore, Fed. R. Civ. P. 55(b)(2), the rule governing default judgments, provides that "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . establish the truth of any allegation by evidence." *See also* 10A Wright, Miller & Kane, Federal Practice & Procedure § 2684, at 28 ("The court has discretion to decide whether to

12

enter a judgment by default . . . and Rule 55(b)(2) empowers the district judge to hold hearings or 'order such references as it deems necessary and proper' to aid its execution of this discretion.").

As the Court noted in its opinion denying Plaintiffs' original motion for default judgment, "the Amended Complaint's substantive allegations simply refer to 'Defendants' as a group, without specifying any actions or omissions by the Shanghai Huangzhou Defendants, including their role in the allegedly tortious design, manufacture, assembly, marketing and sale of the Heater." *Hunter*, 2020 WL 5258313, at *10, 2020 U.S. Dist. LEXIS 161142, at *29. However, this is not necessarily a fatal flaw. "[N]othing in Rule 8 prohibits collectively referring to multiple defendants where the claim alerts [the] defendants that identical claims are asserted against each defendant," so long as the allegations "provide[] enough information to put [each defendant] on notice of its alleged role" in the misconduct at issue. *Tardiuono-Quigley v. HSBC Mortg. Corp. (USA)*, No. 15-cv-6940, 2017 WL 1216925, at *8, 2017 U.S. Dist. LEXIS 47982, at *22-23 (S.D.N.Y. March 30, 2017) (citations omitted). As this Court has observed, the question is whether the allegations, even if they "refer to 'Defendants' collectively without distinguishing each Defendant's particular role," "simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests,'" with "fair notice" defined as "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Richards v. Johnson & Johnson, Inc.*, No. 17-cv-00178, 2018 WL 2976002, at *2, 2018 U.S. Dist. LEXIS 97899, at *4-5 (N.D.N.Y. June 12, 2018) (citations omitted); *see also LaForgia v. Vergano*, No. 15-cv-8589, 2017 WL 3034347, at *5, 2017 U.S. Dist. LEXIS 109691, at *14-15 (S.D.N.Y. July 14, 2017) (explaining that "[w]hile there may be circumstances in which

allegations made collectively against several defendants are insufficiently specific to put the defendants on notice of their alleged conduct," that is not the case where "Plaintiffs have alleged that all Individual Defendants, which includes [a specific defendant], took part in the decision to condemn the Property and caused Plaintiffs to be evicted from their home").

Furthermore, the Court may consider the documentary evidence submitted with Plaintiffs' renewed motion for default judgment in determining whether they have stated a claim against the Shanghai Huangzhou Defendants. The Second Circuit has observed that a motion for default judgment may be granted based on "the factual allegations in the complaint, combined with uncontroverted documentary evidence submitted by plaintiffs" with their motion. *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Contr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015); *see also, e.g., Cabrera v. 1560 Chirp Corp.*, No. 15-cv-8194, 2017 WL 1289349, at *11, 2017 U.S. Dist. LEXIS 33380, at *28-29 (S.D.N.Y. March 6, 2017) (applying *Bricklayers* and its progeny and relying on affidavit outside the complaint to find that Plaintiff met elements of a FLSA claim on a motion for default judgment), *report & recommendation adopted,* 2017 WL 1314123, 2017 U.S. Dist. LEXIS 53368 (S.D.N.Y. Apr. 6, 2017); *Zurita v. Bergen Pizza Inc.*, No. 12-cv-3874, 2016 U.S. Dist. LEXIS 28170,[5] at *8-10 (March 1, 2016) (same), *report & recommendation adopted*, 2016 WL 1089262, 2016 U.S. Dist. LEXIS 35938 (E.D.N.Y. March 21, 2016).[6] This approach is also consistent with Fed. R. Civ. P. 55(b)(2),

---

[5] No parallel Westlaw citation available.

[6] The Court recognizes that courts in this Circuit have disagreed on the permissibility of looking to evidence outside the complaint in adjudicating a motion for default judgment. *Compare, e.g., Ocasio v. Big Apple Sanitation, Inc.*, No. 13-cv-4758, 2015 WL 502226, at *2, 2015 U.S. Dist. LEXIS 13946, at *4 (E.D.N.Y. Feb. 5, 2015) (declining to consider evidence submitted in support of motion for default judgment because "[d]istrict courts . . . are limited to the four corners of a complaint when evaluating whether a plaintiff's allegations, taken as true, are sufficient to prove a defendant's liability as a matter of law" (citations omitted)), *with Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*, No. 11-cv-5980, 2013 WL 5977440, at *6-7, 2013 U.S. Dist. LEXIS 161188, at *19-23 (S.D.N.Y. Nov. 12, 2013) (finding that a complaint's allegations standing alone were insufficient to establish a defendant's particular role in the alleged misconduct, but nonetheless granting a default judgment because the "documentary evidence attached to [Plaintiffs'] motion for default judgment" established those particularized facts), *report & recommendation adopted* 2014 WL

which establishes that "[t]o the extent that the plaintiff's allegations are inadequate, 'a district court has discretion. . . to require proof of necessary facts' to satisfy itself that there is 'a valid cause of action[.].'" *Cent. Produce Corp. v. 32-18 M&M Corp.*, No. 17-cv-3841, 2018 WL 4327923, at *2, 2018 U.S. Dist. LEXIS 114731, at *5 (E.D.N.Y. July 9, 2018) (quoting *Au Bon Pain*, 653 F.2d at 65), *report & recommendation adopted* 2018 WL 4326925, 2018 U.S. Dist. LEXIS 154092 (E.D.N.Y. Sept. 10, 2018); *see also* Fed. R. Civ. P. 55(b)(2) (providing that "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . establish the truth of any allegation by evidence").[7]

Therefore, in determining whether Plaintiffs have sufficiently stated a claim against the Shanghai Huangzhou Defendants, the Court will look to the well-pled allegations in the Amended Complaint, as well as the documentary evidence submitted by Plaintiffs in support of their renewed motion for default judgment.[8]

---

112397, 2014 U.S. Dist. LEXIS 2624 (S.D.N.Y. Jan. 8, 2014). However, the weight of the authority, including *Bricklayers*, as well as the plain language of Rule 55(b)(2) and the general discretion afforded District Courts with respect to default judgments, supports the Court's approach.

[7] Because the Shanghai Huangzhou Defendants have defaulted by their failure to appear in this action, and therefore would not be entitled to service of an amended complaint under the Federal Rules of Civil Procedure, to the extent the Court finds that the facts necessary to state a claim against the Shanghai Huangzhou Defendants are supplied by Plaintiffs' documentary evidence rather than the Amended Complaint itself, the Court need not require Plaintiffs to amend their complaint to add these additional facts and re-serve it on the Shanghai Huangzhou Defendants. *See Zurita*, U.S. Dist. LEXIS 28170, at *10 ("[I]t would be inefficient to require plaintiff to file an amended complaint to add the additional allegations in his affidavit [submitted with his motion for default judgment]. Due to defendant's default, plaintiff would not be required to serve upon defendants [*sic*] an amended complaint with these additional allegations." (citing Fed. R. Civ. P. 5(a)(2))); *see also* Fed. R. Civ. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4.").

[8] In their partial oppositions, the Home Depot and Quality Craft Defendants take no position regarding whether the Court should consider Plaintiffs' extrinsic evidence in ruling on Plaintiffs' motion for default judgment, but argue that if the Court does so, it should not deem the evidence admitted for purposes of Plaintiffs' litigation against these non-defaulting Defendants. (Dkt. No. 158, at ¶¶ 3-4; Dkt. No. 157, at 3-5; Dkt. No. 159, at ¶¶ 3-4, 10). The Home Depot Defendants lodge specific objections to the admissibility of Plaintiffs' evidence, in which the Quality Craft Defendants join, and both Defendants seek to ensure these objections are preserved even if the Court enters a default judgment against either of the Shanghai Huangzhou Defendants. (Dkt. No. 158, at ¶¶ 3-4, 6-10; Dkt. No. 157, at 3-5; Dkt. No. 159, at ¶ 3). Since the non-defaulting Defendants do not contest the Court's use of Plaintiffs' evidence for purposes of resolving this motion for default judgment, the Court need not consider these evidentiary objections now. Rather, the Court will consider Plaintiffs' evidence solely for the purpose of determining whether a default judgment against the Shanghai Huangzhou Defendants is appropriate, without prejudice to the non-defaulting Defendants' right to bring

1.     **Strict Products Liability Claims**[9]

"A strict products liability claim arises against a manufacturer, a retailer, or a commercial lessor of a product if (1) the product is defective, and (2) the defect caused plaintiff's injury." *Lewis v. Abbott Labs.*, No. 08-cv-7480, 2009 WL 2231701, at *4, 2009 U.S. Dist. LEXIS 131328, at *8 (S.D.N.Y. June 18, 2009), *report & recommendation adopted* 2009 WL 2231701, 2009 U.S. Dist. LEXIS 64831 (S.D.N.Y. July 24, 2009). Under New York law, strict liability is not limited to manufacturers of a particular product, but extends to retailers and distributors that sell the product in the normal course of their business. *See Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 397-98 (S.D.N.Y. 2018); *see also Godoy v. Abamaster of Miami, Inc.*, 754 N.Y.S.2d 301, 305 (N.Y. App. Div. 2d Dep't 2003) ("Distributors and retailers may be held strictly liable to injured parties, even though they may be innocent conduits in the sale of the product, because liability rests not upon traditional considerations of fault and active negligence, but rather upon policy considerations which dictate that those in the best 'position to exert pressure for the improved safety of products' bear the risk of loss resulting from the use of the products." (citation omitted)).

---

any evidentiary challenges to Plaintiffs' use of this evidence against them at a later stage. *See, e.g., Rivera v. Limassol Grocery, Corp.*, No. 16-cv-6301, 2019 WL 1320339, at *6, 2019 U.S. Dist. LEXIS 2821, at *19-21 (E.D.N.Y. Jan. 4, 2019) (explaining that default judgments have no collateral estoppel effect against non-defaulting defendants in the same litigation and citing case law); *Lemache v. Tunnel Taxi Mgmt., LLC*, 354 F. Supp. 3d 149, 155-56 (E.D.N.Y. 2018) (same), *report & recommendation adopted* 354 F.Supp.3d 149 (E.D.N.Y. 2019).

[9] Plaintiffs do not identify the state law they contend is applicable to their claims. "A federal court sitting in diversity must apply the choice of law rules of the forum state, in this case New York." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1538 (2d Cir. 1997). "Where, as here, a plaintiff's claim sounds in tort, 'New York courts apply an 'interests analysis,' under which the law of the jurisdiction having the greatest interest in the litigation is applied." *Okimoto v. Yougjun Cai*, No. 13-cv-4494, 2015 WL 3404334, at *4, 2015 U.S. Dist. LEXIS 68295, at *9-10 (S.D.N.Y. May 21, 2015) (citing *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998)). In cases involving a conduct-regulating rule, as distinct from a loss-allocating rule, "the law of the jurisdiction where the [allegedly tortious act] occurred will generally apply because that jurisdiction has the greatest interest in regulating behaviors within its borders." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 49 (2d Cir. 2013) (citations omitted). Here, Plaintiffs' purchase of the allegedly defective Heater and Plaintiff M.H.'s resulting injuries occurred in New York, and no party has presented any reason why a different state's law should apply to Plaintiffs' claims. Thus, for purposes of this motion for default judgment, the Court will apply New York law.

There are three types of product defects that are actionable under New York law: "(1) a manufacturing defect, which results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm; (2) a warning defect, which occurs when the inadequacy or failure to warn of a reasonably foreseeable risk accompanying a product causes harm; and (3) a design defect, which results when the product as designed is unreasonably dangerous for its intended use." *McCarthy v. Olin Corp.*, 119 F.3d 148, 154-55 (2d Cir. 1997) (citations omitted). Plaintiffs bring claims for strict products liability under all three theories. (Dkt. No. 11, at ¶¶ 33-52).

### a.    Design Defect

A "defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce." *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107 (1983) (quoting *Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 49 N.Y.2d 471, 479 (1980)). This standard, which balances a product design's social and individual utility against the risk of harm associated with such design, taking into account the availability and feasibility of safer designs, is known as the "risk-utility" test. *See Maxwell v. Howmedica Osteonics Corp.*, 713 F. Supp. 2d 84, 91 (N.D.N.Y. 2010); *Robinson*, 49 N.Y.2d at 479 ("Since no product may be completely accident proof, the ultimate question in determining whether an article is defectively designed involves a balancing of the likelihood of harm against the burden of taking precaution against that harm."). Ultimately, to prevail on a design defect claim, Plaintiff must show that: "(1) the product, as designed, posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury." *Maxwell*, 713 F. Supp. 2d at 90.

Here, Plaintiffs allege that the Heater was designed in a way that caused it to "generate[] an unsafe and dangerous level of heat," that this defective design caused M.H.'s body temperature to rise to 108 degrees when it was used to heat her bedroom, and that "[t]here was no other heat source in the bedroom other than the Heater that would explain M.H.'s body temperature being 108 degrees." (Dkt. No. 11, at ¶¶ 24-26). Plaintiffs further allege that the Heater was being used by Plaintiffs "as intended," "in a reasonably foreseeable manner" and "without any change in condition from when it left the possession of Defendants," and that it was "feasible for the Defendants to design the Heater in a safer alternative manner." (*Id.* at ¶¶ 28, 35-36). While the Amended Complaint does not allege a specific design defect or a specific alternative, safer design, as this Court has noted in the past, this does not necessarily defeat a design defect claim at the pleading stage, where "Plaintiff[s] may not possess this sort of technical information without discovery and expert consultation."[10] *Parillo v. Stryker Corp.*, No. 15-cv-155, 2015 WL 12748006, at *5-6, 2015 U.S. Dist. LEXIS 191834, at *11-14 (N.D.N.Y. Sept. 29, 2015) (citing *Ohuche v. Merck & Co., Inc.*, No. 11-cv-2385, 2011 WL 2682133, at *2, 2011 U.S. Dist. LEXIS 73904, at *9 (S.D.N.Y. July 7, 2011)). Here, while somewhat sparse, Plaintiffs' alleged facts, taken as true, allow the Court to "infer the existence of a design defect and 'raise a right to relief above the speculative level.'" *Id.* at *6, 2015 U.S. Dist. LEXIS 191834, at *13 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Plaintiffs' allegations are not pled with precision, in that they do not identify the Shanghai Huangzhou Defendants' specific role in the Heater's design, manufacturing and sale

---

[10] The Court notes that the executive summary of Plaintiffs' expert report submitted with their renewed motion, which was developed following factual and expert discovery that has proceeded with respect to the *other* Defendants since the Amended Complaint was filed, *does* allege specific technical defects in the Heater and, if credited, would support Plaintiffs' design defect claim. (Dkt. No. 151-1, at 24-27). However, for the reasons stated, the Court finds that the design defect allegations in the Amended Complaint, which were prepared before such discovery occurred, are sufficient to state a claim even without considering this supplemental piece of evidence.

process. However, Plaintiffs do allege that the "Defendants," a group which clearly includes the Shanghai Huangzhou Defendants, "designed, manufactured, assembled, marketed, distributed, and sold" the Heater. (Dkt. No. 11, at ¶ 21). These allegations at least put the Shanghai Huangzhou Defendants on notice that Plaintiffs alleged that they were partially responsible for the defective design and sale of the Heater, and thus that any design defect allegations were pled against them specifically, as well as the other Defendants. *See Richards*, 2018 WL 2976002, at *4, 2018 U.S. Dist. LEXIS 97899, at *10 ("Although the design defect allegations refer to 'Defendants' as a group of undifferentiated persons, the allegations clearly relate to filters 'designed' by Cordis. Cordis, therefore, cannot be said to have lacked fair notice of allegations that the design of its TrapEase filters made them unreasonably dangerous for their intended use." (record citation omitted)). Furthermore, the evidence submitted with Plaintiffs' renewed motion for default judgment supplies the particularized details about the Shanghai Huangzhou Defendants' roles that the Amended Complaint itself lacks. This evidence reflects that Shanghai Huangzhou Electrical manufactured the Heater and that Shanghai Huangzhou Industry distributed it in the normal course of its business.(Dkt. No. 151-1, at 3-23, 28-50; Dkt. No. 163, at 4-95). Given these roles, both Shanghai Huangzhou Defendants may be held liable for the Heater's defects under a strict liability theory. *Eberhart*, 325 F. Supp. 3d at 397-98.

Thus, the allegations in the Amended Complaint taken as true, viewed together with the record evidence submitted by Plaintiffs with their renewed motion for default judgment, sufficiently state a claim for design defect against both Shanghai Huangzhou Defendants.

### b.   Manufacturing Defect

"To state a claim for manufacturing defect . . . the plaintiff must allege that (1) the product was defective due to an error in the manufacturing process and (2) the defect was the proximate cause of plaintiff's injury." *Williamson v. Stryker Corp.*, No. 12-cv-7083, 2013 WL

3833081, at *4, 2013 U.S. Dist. LEXIS 104445, at *10 (S.D.N.Y. July 23, 2013); *see also Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001) (explaining, in a decision denying summary judgment on a manufacturing defect claim, that a strict liability claim for manufacturing defect requires a showing that a product was "defective as a result of 'some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction,'" that the defect rendered the product "not reasonably safe," and that "the defect was the cause of plaintiff's injury." (quoting *Caprara v. Chrysler Corp.*, 52 N.Y.2d 114, 129 (1981) (Jasen, Jones, Meyer, JJ., dissenting))). "In other words, a manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units." *Colon*, 199 F. Supp. 2d at 85. Identifying a specific manufacturing defect, however, is not always required: "it is well-settled that a plaintiff may rely upon the circumstances of an accident to prove the existence of a manufacturing defect if the product did not perform as intended and the possibility of other causes has been excluded." *Williamson*, 2013 WL 3833081, at *5, 2013 U.S. Dist. LEXIS 104445, at *11-12.

Here, the same allegations Plaintiffs rely on for their design defect claim, discussed above, support their claim for manufacturing defect. (Dkt. No. 11, at ¶¶ 24-26, 28, 42-44). As with their design defect claim, Plaintiffs are not required to allege technical details regarding the specific manufacturing defect that caused the Heater to malfunction in order to state a plausible claim for relief, given their allegations that defects in the Heater caused it to generate an unsafe level of heat when used as intended and that there was no other heat source in M.H.'s room that could explain her resulting injuries.[11] *Parillo*, 2015 WL 12748006, at *5, 2015 U.S. Dist. LEXIS

---

[11] As with their design defect claim, the Court notes that the executive summary of Plaintiffs' expert report submitted with their renewed motion contains allegations of specific defects in the Heater that would support Plaintiffs' manufacturing defect claim, (Dkt. No. 151-1, at 24-27), but that the manufacturing defect allegations in the Amended Complaint are sufficient to state a claim even without considering this supplemental piece of evidence.

191834, at *11; *see also, e.g., O'Neil v. Argon Med. Devices, Inc.*, 17-cv-640, 2020 WL
1149904, at *6, 2020 U.S. Dist. LEXIS 26043, at *16-17 (N.D.N.Y. Feb. 13, 2020) (finding
manufacturing defect adequately alleged, even without allegations regarding a specific defect in
the manufacturing process, where "the product did not perform as intended and the possibility of
other causes has been excluded." (citing *Williamson*, 2013 WL 3833081, at *5, 2013 U.S. Dist.
LEXIS 104445, at *11-12)), *report & recommendation adopted,* 2020 WL 1140511, 2020 U.S.
Dist. LEXIS 40172 (N.D.N.Y. March 9, 2020). As with Plaintiffs' claim for design defect, the
allegations in the Amended Complaint that the Shanghai Huangzhou Defendants and the other
Defendants "designed, manufactured, assembled, marketed, distributed, and sold" the Heater,
(Dkt. No. 11, at ¶ 21), gave the Shanghai Huangzhou Defendants notice that Plaintiffs alleged
they were at least partially responsible for the manufacturing defects alleged. *See Richards*, 2018
WL 2976002, at *6, 2018 U.S. Dist. LEXIS 97899, at *18. And again, the evidence submitted
with Plaintiffs' renewed motion for default judgment suggests that Shanghai Huangzhou
Electrical and Shanghai Huangzhou Industry were the manufacturer and distributor, respectively,
of the Heater, further substantiating Plaintiffs' claims against both Defendants under a strict
liability theory. (Dkt. No. 151-1, at 3-23, 28-50; Dkt. No. 163, at 4-95). Thus, the allegations in
the Amended Complaint taken as true, viewed together with the record evidence submitted by
Plaintiffs' with their renewed motion for default judgment, sufficiently state a claim for
manufacturing defect against both Shanghai Huangzhou Defendants.

    c.  **Failure to Warn**

   "Manufacturers have a duty to warn against 'latent dangers resulting from foreseeable
uses of its product of which it knew or should have known,' and 'the danger of unintended uses
of a product provided these uses are reasonably foreseeable.'" *Newell v. Ryobi Techs., Inc.*, No.
13-cv-8129, 2015 WL 4617184, at *3, 2015 U.S. Dist. LEXIS 101776, at *7 (S.D.N.Y. Aug. 3,

2015) (quoting *Liriano v. Hobart Corp.,* 92 N.Y.2d 232, 237 (1998)). To succeed on a failure to warn claim, Plaintiffs must establish that: (1) the manufacturer had a duty to warn; (2) the plaintiff used the product in a reasonably foreseeable manner; and (3) the failure to warn was the cause of the plaintiff's injury. *Monell v. Scooter Store, Ltd.*, 895 F. Supp. 2d 398, 413 (N.D.N.Y. 2012).

Here, Plaintiffs allege that "Defendants owed a duty to all users of the Heater, including the Plaintiffs, to provide adequate warnings of known dangers with the Heater and dangers which in the use of reasonable care Defendants should have known about, including, but not limited to, warning that the Heater could generate an unsafe and dangerous level of heat and warning about the danger of the Heater causing heat stroke." (Dkt. No. 11, at ¶ 48). Plaintiffs further allege that Defendants "breached the foregoing duty because the Heater did not contain adequate warnings to alert Plaintiffs and other users of the dangers associated with it." (*Id.* at ¶ 49).

Even assuming Plaintiffs have established that either of the Shanghai Huangzhou Defendants had a duty to warn with respect to the Heater, beyond the conclusory allegations set forth above, Plaintiffs fail to allege any specific facts regarding what warnings, if any, *were* provided with the Heater, and why such warnings were inadequate. Without more factual context, Plaintiffs' allegations are insufficient to state a failure to warn claim against either Shanghai Huangzhou Defendant. *See, e.g., O'Neil*, 2020 WL 1149904, at *7, 2020 U.S. Dist. LEXIS 26043, at *19-20 (dismissing failure to warn claim where "Plaintiff does not provide any factual allegations regarding the content of the warnings which were in fact provided to him . . . nor does he explain *how* those warnings were inadequate . . . Without stating what warnings

were in fact given to Plaintiff . . . the allegations that the warnings were inadequate or failed to properly warn of the risks are no more than legal conclusions" (citations omitted)).[12]

### 2. Negligence Claim

To prevail on a negligence theory of recovery based on a defective product, a plaintiff must prove that: (1) "the manufacturer owed plaintiff a duty to exercise reasonable care"; (2) the manufacturer breached "that duty by fail[ing] to use reasonable care so that a product is rendered defective, *i.e.* reasonably certain to be dangerous"; (3) "the defect was the proximate cause of the plaintiff's injury"; and (4) the plaintiff sustained "loss or damage." *Colon*, 199 F. Supp. 2d at 82. These elements are "not markedly dissimilar" from the requirement for strict products liability in New York. *See McCarthy*, 119 F.3d at 170 (Calabresi, J., dissenting) (explaining that the "primary difference between the two causes of action is that a plaintiff may recover in strict products liability without showing that the defendant's *conduct* was wrongful, so long as its *product* was defective"). Furthermore, it is well-settled that a plaintiff may proceed on a negligence claim in the absence of evidence identifying a specific product defect, provided that he or she can "prove that the product did not perform as intended and exclude all other causes for the product's failure that are not attributable to defendants." *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 125 (2d Cir. 2006) (quoting *Speller v. Sears, Roebuck & Co.*, 100 N.Y.2d 38, 41 (2003)), *aff'd*, 552 U.S. 312 (2008); *see also State Farm Fire & Cas. Co. v. Gen. Elec. Co.*, No. 12-cv-1032, 2015 WL 4496343, at *2, 2015 U.S. Dist. LEXIS 95828, at *3 (N.D.N.Y. July 23, 2015)

---

[12] The executive summary of Plaintiffs' expert report submitted with their renewed motion does not address the issue of warnings. (Dkt. No. 151-1, at 24-27). The interrogatory responses from the Quality Craft Defendants, which Plaintiffs submitted with their supplemental declaration, contain some information about warnings that accompanied the Heater, (Dkt. No. 163, at 26-27), but Plaintiffs do not present any argument about whether this evidence supports a failure to warn claim against the Shanghai Huangzhou Defendants.

("A plaintiff need not prove a specific defect but may provide circumstantial evidence to support a finding that the product did not perform as intended and that other causes are excluded.").

Because the Court has already found that Plaintiffs have adequately alleged design and manufacturing defect claims for strict liability against the Shanghai Huangzhou Defendants, Plaintiffs' negligence theory may prevail as well so long as the Amended Complaint contains allegations that these Defendants' conduct was wrongful, i.e. that they failed to use reasonable care in designing or manufacturing the Heater. *See Nelson v. Ranger, Inc.*, No. 05-cv-0093, 2009 WL 3851622, at *5, 2009 U.S. Dist. LEXIS 107014, at *17 (N.D.N.Y. Nov. 17, 2009) ("Where the plaintiff claims negligence under a design defect theory, the focus shifts from the characteristics of the product itself to the conduct of the manufacturer; plaintiff must additionally prove that the manufacturer could have foreseen the injury and, therefore, acted unreasonably in designing the product." (quoting *Mustafa v. Halkin Tool, Ltd.*, No. 00-cv-4851, 2007 WL 959704, at *10, 2007 U.S. Dist. LEXIS 23096, at *35-36 (E.D.N.Y. Mar. 29, 2007))); *Pahuta v. Massey-Ferguson, Inc.*, 942 F. Supp. 161, 165 (W.D.N.Y. 1996) (stating that, under New York negligence law, "a manufacturer has a duty to use reasonable care in designing its product").

The Amended Complaint alleges that "Defendants" breached their duty of care to foreseeable users of the Heater by "negligently designing, manufacturing, testing, inspecting, packaging, labeling, distributing, and marketing the Heater and by failing to warn of the dangers associated with the Heater." (Dkt. No. 11, at ¶¶ 54-55). Plaintiffs also allege that the defects in the Heater led it to overheat and cause M.H.'s injuries, that the Heater was being used as intended at the time of Plaintiffs' injuries, and that there was no other heat source in the room that could have caused M.H.'s injuries, (Dkt. No. 11, at ¶¶ 24-26, 28). Finally, Plaintiffs' supplemental evidence establishes that Shanghai Huangzhou Electrical manufactured the Heater,

and thus may be fairly held responsible for the allegedly negligent manufacturing and design Plaintiffs complain of. (Dkt. No. 151-1, at 3-23, 28-50). Therefore, the allegations in the Amended Complaint, accepted as true, viewed together with Plaintiffs' supplemental evidence, sufficiently state a claim for negligence against Shanghai Huangzhou Electrical.

However, neither the Amended Complaint's allegations nor Plaintiffs' supplemental submissions contain any evidence of awareness of the Heater's defects, or otherwise negligent misconduct, on the part of Shanghai Huangzhou Industry, which was a mere distributor of the Heater rather than its manufacturer. *Godoy*, 754 N.Y.S.2d at 305 (distinguishing between strict liability claims, which may lie against distributors and retailers who are "innocent conduits in the sale of a product," and claims based "upon traditional considerations of fault and active negligence"). Thus, Plaintiffs have not stated a negligence claim against Shanghai Huangzhou Industry.

### 3.      Warranty Claims

Plaintiffs also bring claims for breach of the implied warranty of merchantability and fitness for a particular purpose, as well as breach of express warranty. Importantly, to recover on an express or implied warranty claim under New York law, a plaintiff "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.Y. U.C.C. § 2-607(3); *see also Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 260-62 (E.D.N.Y. 2014); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013).[13]

---

[13] The Court recognizes that "a minority of New York State cases suggest an exception to the notice requirement in retail sales . . . [that] appears to be exclusively applied where a party alleges physical, in addition to economic, injury." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143-44 (E.D.N.Y. 2018) (collecting such cases). However, typically, this limited "exception has been applied in cases involving products for human consumption, particularly those that are edible." *Tomasino v. Estee Lauder Companies, Inc.*, No. 13-cv-4692, 2015 WL 4715017, at *4, 2015

a.      **Breach of the Implied Warranty of Merchantability**

The implied warranty of merchantability focuses on the expectations of the consumer. *See, e.g.*, *Castro v. QVC Network, Inc.*, 139 F.3d 114, 118 (2d Cir. 1998); *Denny*, 87 N.Y.2d at 258-59. The inquiry is whether the product was "fit for the ordinary purposes for which such goods are used." *Id.* at 258 (citing N.Y.U.C.C. § 2-314(2)(c)). To state a plausible claim for breach of the implied warranty of merchantability, therefore, a plaintiff must allege: "(1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect is the proximate cause of the [harm]." *Dalton v. Stedman Mach. Co.*, No. 05-cv-452, 2008 WL 351676, at *8, 2008 U.S. Dist. LEXIS 9305, at *29 (N.D.N.Y. Feb. 7, 2008). Thus, while an implied warranty claim is a conceptually distinct cause of action from a strict products liability claim, in practice, "[l]iability under strict products liability and implied warranty theory are essentially the same." *Pinello v. Andreas Stihl Ag & Co. KG*, No. 08-cv-00452, 2011 WL 1302223, at *17, 2011 U.S. Dist. LEXIS 34460, at *44 (N.D.N.Y. Mar. 31, 2011).[14]

Here, Plaintiffs' allegations supporting their implied warranty of merchantability claim largely overlap with those supporting their strict liability claims, which the Court has already found are sufficient to state claims for manufacturing and design defect. (Dkt. No. 11, at ¶¶ 58-64). However, the Amended Complaint includes no allegations that Plaintiffs notified either Shanghai Huangzhou Defendant, or any Defendant, of the alleged breach within a reasonable

---

U.S. Dist. LEXIS 103991, at *9 (E.D.N.Y. Aug. 7, 2015). In any event, Plaintiffs have raised no argument that this exception should apply to the present case.

[14] "The [New York] Court of Appeals has held that liability under strict products liability and implied warranty theory are essentially the same, except that under the implied warranty theory, it is not necessary to show the feasibility of alternative designs or the manufacturer's 'reasonableness' in marketing it in the unsafe condition. And, in most cases, as a practical matter, the distinction between the defect concepts in tort law and in implied warranty theory has little or no effect." *Dalton*, 2008 WL 351676, at *7, 2008 U.S. Dist. LEXIS 9305, at *27-28 (citing *Denny*, 87 N.Y.2d at 258-59, 262).

time after discovering the defect. N.Y. U.C.C. § 2-607(3). Therefore, the Court finds that Plaintiffs have not stated a claim against either Shanghai Huangzhou Defendant for breach of the implied warranty of merchantability.

###### b. Breach of the Implied Warranty of Fitness for a Particular Purpose

An implied warranty of fitness arises when a seller "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." N.Y. U.C.C. § 2-315. The implied warranty of fitness thus "does not arise in every consumer sale." *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986). To state a claim for breach of the implied warranty of fitness, a complaint must allege that: (1) the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods were required, (2) the buyer was justifiably relying on the seller's skill and judgment to select suitable goods, and (3) the buyer did in fact rely on the seller's skill. *Guariglia v. Proctor & Gamble Co.*, No. 15-cv-04307, 2018 WL 1335356, at *8, 2018 U.S. Dist. LEXIS 42861, at *21 (E.D.N.Y. Mar. 14, 2018) (citing *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoe Co. LLC*, No. 05-cv-837, 2007 WL 1834599, at *9, 2007 U.S. Dist. LEXIS 46290, at *29 (N.D.N.Y. June 26, 2007)). A "particular purpose" is different from the "ordinary purpose" of the goods. N.Y.U.C.C. § 2-315 (Official Comment) (noting a "particular purpose" "envisages a specific use by the buyer which is peculiar to the nature of his business").

Here, Plaintiffs' allegations regarding this claim are largely duplicative of their products liability and breach of implied warranty of merchantability claims. (Dkt. No. 11, ¶¶ 65-72). Plaintiffs do not allege that they required the Heater for any particular purpose separate from its ordinary and intended purpose of heating a residential home, or that either Shanghai Huangzhou

Defendant knew or had reason to know of any such particular purpose. *See O'Neil*, 2020 WL 1149904, at *9-10, 2020 U.S. Dist. LEXIS 26043, at *24-27 (concluding that the plaintiffs' allegations that product was unfit for its *ordinary* purpose, and that the defendants were aware of that intended use, were insufficient to plead a claim of implied warranty of fitness for a *particular* purpose). Furthermore, the Amended Complaint includes no allegations that Plaintiffs notified either Shanghai Huangzhou Defendant, or any Defendant, of the alleged breach within a reasonable time after discovering the defect. N.Y. U.C.C. § 2-607(3). Therefore, the Court finds that Plaintiffs have not stated a claim against either Shanghai Huangzhou Defendant for breach of the implied warranty of fitness for a particular purpose.

### c.      Breach of Express Warranty

"To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.,* 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014). According to the New York Uniform Commercial Code, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. § 2–313(1)(a), (b).

Here, Plaintiffs generally allege that "Defendants expressly warranted and represented to the public that the Heater was safe to use as a Heater in a residential home," (Dkt. No. 11, at ¶ 74), but do not "allege[] the terms of a specific express warranty or to whom it was made." *O'Neil*, 2020 WL 1149904, at *8, 2020 U.S. Dist. LEXIS 26043, at *21; *see also Hingos v. W.L.*

28

*Gore & Assocs.*, No. 16-cv-969, 2017 WL 3309095, at *6, 2017 U.S. Dist. LEXIS 151114, at

*19 (N.D.N.Y. Jan. 27, 2017) (dismissing claim for breach of express warranty where plaintiff

failed to allege "the exact terms of the warranty or where or to whom it was made); *Teixeira v.*

*St. Jude Med. S.C., Inc.*, 193 F. Supp. 3d 218, 225 (W.D.N.Y. 2016) (dismissing claim for breach

of express warranty where plaintiff alleged representatives of defendants made "personal

representations to [p]laintiff and/or his treating medical providers" that devices were safe

because plaintiff did not plead any facts "regarding where, when, and how" the statements were

made). Furthermore, as with Plaintiffs' other warranty-related allegations, the Amended

Complaint fails to allege that Plaintiffs notified either Shanghai Huangzhou Defendant, or any

Defendant, of the alleged breach within a reasonable time after discovering the defect. N.Y.

U.C.C. § 2-607(3). Therefore, the Court finds that Plaintiffs have not stated a claim against either

Shanghai Huangzhou Defendant for breach of express warranty.

### C.   Default Judgment

Based on the foregoing analysis, the Court finds that the well-pled allegations in

Plaintiffs' Amended Complaint, together with the evidence submitted in connection with

Plaintiffs' renewed motion for default judgment, sufficiently state claims against Shanghai

Huangzhou Electrical for negligence and strict liability under design and manufacturing defect

theories, and against Shanghai Huangzhou Industry for strict liability under design and

manufacturing defect theories. However, the Home Depot Defendants argue that, "even if this

Court concludes that plaintiffs have established the jurisdictional and liability requisites for entry

of default judgment, there remain good reasons to delay the determination of damages until the

action is resolved against the remaining defendants." (Dkt. No. 157, at 8). For the reasons set

forth below, the Court agrees, and declines to enter a default judgment against the Shanghai

Huangzhou Defendants at this time.

In 1872, the Supreme Court issued its seminal ruling on default judgments in cases involving both defaulting and non-defaulting defendants. *Frow v. De La Vega*, 82 U.S. 552 (1872). Vacating the lower court's grant of a default judgment against one defaulting defendant where the other, non-defaulting defendants had succeeded against plaintiff in trial, the Court observed that:

> If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law.

*Frow*, 82 U.S. at 554. Many years later, after the adoption of the Federal Rules, the Second Circuit observed: "We think it is most unlikely that *Frow* retains any force subsequent to the adoption of Rule 54(b). In any event, at most, *Frow* controls in situations where the liability of one defendant necessarily depends upon the liability of the others." *International Controls Corp. v. Vesco*, 535 F.2d 742, 746 n.4 (2d Cir. 1976).

"The Second Circuit has not addressed the standard it articulated in *Vesco* since that case was decided." *Rivera*, 2019 WL 1320339, at *3 n.2, 2019 U.S. Dist. LEXIS 2821, at *10 n.2. However, the Southern District of New York has explained that subsequent interpretations of *Frow*:

> agree[] that it prohibits entry of a default judgment "against one of several defendants (1) where the theory of recovery is one of true joint liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable, or (2) where the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant." In either case, it is appropriate to enter a default, though not a judgment, against the defaulting party, thereby barring his participation in further proceedings as to the merits. If the remaining defendants prevail, the defaulting defendant would then be exonerated, whereas if the plaintiff prevails on the merits, judgment would be entered against all defendants, including the defaulting party.

*Friedman v. Lawrence*, No. 90-cv-5584, 1991 WL 206308, at *2-3, 1991 U.S. Dist. LEXIS

13959, at *4-6 (S.D.N.Y. Oct. 2, 1991) (citations omitted). However, "[t]he contours of the

precise rule in the Second Circuit" as to when *Frow* applies "are not entirely clear . . . In short,

there remains some disagreement in this Circuit as to whether, when defendants are similarly

situated as to a claim or legal defense but true joint liability is not alleged, the Court should, and

may, enter a default judgment as to liability against one defendant when active litigants remain."

*Knowles-Carter v. Feyonce, Inc.*, No. 16-cv-2532, 2017 WL 11567528, at *4-5, 2017 U.S. Dist.

LEXIS 233031, at *10-15 (S.D.N.Y. Sept. 23, 2017) (collecting case law and examining

different courts' approaches).

      In any event, even where a Court determines that a default judgment as to liability may

properly be entered, "the courts have consistently held that it is appropriate to enter judgment

solely as to liability and not as to the amount of damages to be assessed against the defaulting

party, since a separate determination of damages would pose the prospect of inconsistent

judgments." *Friedman,* 1991 WL 206308, at *3, 1991 U.S. Dist. LEXIS 13959, at *6-7; *see also*

*Ainbinder v. Money Ctr. Fin. Grp., Inc.*, No. 10-cv-5270, 2013 WL 1335997, at *13-14, 2013

U.S. Dist. LEXIS 47103, at *45-47 (E.D.N.Y. Feb. 28, 2013) (granting default judgment as to

liability, but reserving damages calculation until the case against the non-defaulting defendant is

fully litigated, and collecting cases with similar holdings), *report & recommendation adopted,*

2013 WL 1335893, 2013 U.S. Dist. LEXIS 45501 (E.D.N.Y. March 25, 2013); *but see Int'l*

*Gemmological Inst., Inc. v. Rafaeil*, No. 05-cv-2395, 2005 WL 3880222, at *2-3, 2005 U.S. Dist.

LEXIS 19288, at *4-9 (S.D.N.Y. Aug. 17, 2005) (exercising discretion to hold damages inquest

for defaulting defendant, despite ongoing litigation against non-defaulting defendants, because

"the balance of the equities in the instant case favors my proceeding with the inquest at this

time"), *report & recommendation adopted*, 2006 WL 739822, 2006 U.S. Dist. LEXIS 23339
(S.D.N.Y. Mar. 21, 2006). Where a court grants a default judgment as to liability but reserves
judgment as to damages, "the proper procedure is to consolidate the inquest to determine the
level of damages as to the Defaulting Defendants with the damages aspect of the trial against the
non-defaulting Defendants . . . the Defaulting Defendants may not participate in the merits aspect
of the trial, as their default judgments stand as admissions of liability." *Montcalm Publ'g Corp.
v. Ryan*, 807 F. Supp. 975, 978 (S.D.N.Y. 1992).

   Here, as an initial matter, Plaintiffs have not specified what theory of damages they
intend to pursue, raising questions about whether *Frow* applies and, thus, whether it is
permissible for the Court to grant a default judgment as to liability at this time. *See Coca-Cola
Refreshments United States, Inc. v. Soho Snacks, Inc.*, No. 17-cv-2092, 2019 WL 1150564, at *1-
2, 2019 U.S. Dist. LEXIS 20984, at *1-3 (E.D.N.Y. Feb. 7, 2019) (declining to grant default
judgment against defaulting corporate defendant in light of ongoing litigation against non-
defaulting individual defendant, where complaint "fail[ed] to specify how the liability of one
Defendant affects the liability of the other," and thus the Court "cannot rule out the possibility of
inconsistent judgments"). That said, from the face of the Amended Complaint, it appears that
Plaintiffs allege that each Defendant is separately liable for its own role in the allegedly defective
design, manufacturing and sale of the Heater, and that under Plaintiffs' legal theories, the
Shanghai Huangzhou Defendants' own liability is not necessarily dependent on the liability of
any of the Quality Craft or Home Depot Defendants, or vice-versa. Therefore, the Court assumes
that Plaintiffs intend to proceed not on a theory of pure joint liability, but instead on a joint and
several liability theory, which some courts have held renders *Frow* inapplicable. *See, e.g.,
Friedman*, 1991 WL 206308, at *3-4, 1991 U.S. Dist. LEXIS 13959, at *8-9 (noting that

Plaintiff failed to specify which liability theory he seeks, but that his allegations "demonstrate that the nature of the asserted liability is joint and several" because "the liability of the defaulting defendants is not necessarily dependent upon the liability of" the defaulting defendant and the monetary relief sought "could consistently be awarded against some but not all of the defendants"); *Lemache*, 354 F. Supp. 3d at 154 ("Courts in this Circuit have routinely declined to apply *Frow* in cases asserting joint and several liability, and proceeded to decide the default judgment motion while other parties are litigating.").

However, regardless of Plaintiffs' theory of liability, this case presents circumstances under which granting a default judgment even as to liability would be premature. In some cases where non-defaulting and defaulting defendants "share a 'closely related,' if not identical, defense," courts have denied a default judgment motion on the grounds that granting a default judgment against the non-defaulting defendant "would, in effect, decide the case before . . . the non-defaulting . . . Defendant had an opportunity to be heard.'" *Known Litig. Holdings, LLC v. Navigators Ins. Co.*, No. 12-cv-269, 2015 WL 13636078, at \*2-3, 2015 U.S. Dist. LEXIS 193205, at \*7-8 (D. Conn. Feb. 11, 2015) (discussing case law). Here, while each Defendant obviously has its own unique defenses, all Defendants (including the Shanghai Huangzhou Defendants) share some common, virtually identical defenses, including that the Heater was not defective and that, if it *was* defective, those defects did not cause Plaintiffs' injuries. Of course, granting a default judgment as to liability against the Shanghai Huangzhou Defendants now would not prejudice any non-defaulting Defendant's ability to raise these defenses in their litigation with Plaintiffs, since default judgments have no collateral estoppel effect against non-defaulting defendants in the same litigation. *See Rivera*, 2019 WL 1320339, at \*6, 2019 U.S. Dist. LEXIS 2821, at \*19-21 (discussing this principle and citing case law); *Lemache*, 354 F.

33

Supp. 3d at 155-56 (same). However, doing so *would* raise the specter of inconsistent judgments, since it is possible that, after granting a default judgment against the Shanghai Huangzhou Defendants based in part on their admissions (through their default) that the Heater was defective and that those defects caused Plaintiffs' injuries, the remaining Defendants could later escape liability by proving that the Heater was *not* defective, or that Plaintiffs' injuries were *not* caused by any defects in the Heater. This may put the Court in the position of having to vacate its own default judgments against the Shanghai Huangzhou Defendants to avoid the "unseemly and absurd" result the Supreme Court warned against in *Frow*. 82 U.S. at 554.

Furthermore, the Court perceives no meaningful prejudice to Plaintiffs by reserving a formal judgment as to the Shanghai Huangzhou Defendants' liability for a later stage of the case. Even if the Court were to grant Plaintiffs' request for a default judgment as to *liability* now, under the precedents discussed above, it would reserve a decision on *damages* for a later stage of the case, when a liability determination as been made as to the non-defaulting Defendants and a total damages award may be assessed against all Defendants together. "Without a damages calculation to accompany the liability determination, no final judgment could be entered in [Plaintiffs'] favor, and there could be no enforceable judgment that [they] could attempt to collect." *Lemache*, 354 F. Supp. 3d at 155. Furthermore, because a default judgment against the Shanghai Huangzhou Defendants would have no collateral estoppel effect against the non-defaulting Defendants, granting such a default judgment now "does not assist [Plaintiffs] in litigating the case against" the non-defaulting Defendants. *Id.* For the foregoing reasons, the Court declines to enter a default judgment against the Shanghai Huangzhou Defendants at this time.

**D.      Summary**

For the foregoing reasons, the Court denies Plaintiffs' renewed motion for default

judgment against the Shanghai Huangzhou Defendants. However, because the Shanghai

Huangzhou Defendants' default operates as their admission of all well-pled facts as to liability,

the Shanghai Huangzhou Defendants have forfeited their right to contest their liability in future

proceedings. *See Friedman*, 1991 WL 206308, at *2, 1991 U.S. Dist. LEXIS 13959, at *5

(observing that entry of "a default, though not a judgment, against the defaulting party . . . bar[s]

[the defaulting party's] participation in further proceedings as to the merits").[15] Furthermore, as

discussed above, the Court has already found that it may assert personal jurisdiction over both

Shanghai Huangzhou Defendants, and that Plaintiffs' well-pled allegations (which both Shanghai

Huangzhou Defendants have admitted to by virtue of their default) state claims against them.

Plaintiffs have therefore met all the necessary prerequisites to entering a default judgment as to

liability against the Shanghai Huangzhou Defendants. As such, to the extent it becomes clear at a

later stage that a default judgment as to liability may be entered against the Shanghai Huangzhou

Defendants without creating a risk of inconsistent judgments as discussed above, Plaintiffs may

renew their motion for default judgment against those Defendants.

**IV.      CONCLUSION**

For these reasons, it is hereby

---

[15] The Shanghai Huangzhou Defendants are, of course, free to participate in and present evidence at any future inquest as to an appropriate damages award, as "it is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

**ORDERED** that Plaintiffs' renewed Motion for Default Judgment (Dkt. No. 151) is

**DENIED without prejudice,** with leave to refile after resolution of the claims against the

actively litigating defendants.

**IT IS SO ORDERED.**

Dated: December 7, 2020
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge