UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MEGHAN HUNTER, Individually and as Parent and
Natural Guardian of MH; and MH;

                              Plaintiffs,

v.

SHANGHAI HUANGZHOU ELECTRICAL APPLIANCE
MANUFACTURING CO., LTD.; SHANGHAI
HUANGZHOU INDUSTRY CO., LTD.; QUALITY
CRAFT HOME DÉCOR, INC.; QUALITY CRAFT
MERGERCO; QUALITY CRAFT, LTD.; QCIL
INTERNATIONAL, INC.; HOME DEPOT, USA, INC.;
THE HOME DEPOT, INC.; and HD DEVELOPMENT OF
MARYLAND, INC.,

                              Defendants.

5:17-cv-00052 (BKS/TWD)

---

**Appearances:**

*For Plaintiffs:*
Timothy P. Murphy
Ryan M. Poplawski
Hancock Estabrook, LLP
1800 AXA Tower I
100 Madison Street
Syracuse, New York 13202

*For Defendants Quality Craft Home Décor, Inc., Quality Craft Mergerco, Quality Craft, Ltd., and QCIL International, Inc. (the "Quality Craft Defendants"):*
Marc H. Goldberg, Esq.
Phillips Lytle, LLP
OMNI Plaza, 30 South Pearl Street
Albany, New York 12207

Ryan A. Lema
William D. Christ
Phillips Lytle, LLP
One Canalside
125 Main Street
Buffalo, NY 14203

*For Defendants Home Depot, U.S.A., Inc., The Home Depot, Inc., and HD Development of Maryland, Inc. (the "Home Depot Defendants"):*
Steven W. Williams
Smith, Sovik, Kendrick & Sugnet, P.C.
250 South Clinton Street, Suite 600
Syracuse, New York 13202

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiffs Meghan Hunter, individually and as the parent and natural guardian of M.H., and M.H. (collectively, "Plaintiffs") bring this action against various Defendants, asserting tort claims arising from injuries M.H. sustained when a heater manufactured, distributed and sold by Defendants allegedly malfunctioned. Presently before the Court is the parties' joint motion to redact certain portions of their forthcoming petition to approve their settlement of the infant plaintiff's claim, specifically, the gross settlement amount, individual distribution amounts, litigation expenses and attorneys' fees. (Dkt. No. 167). Pursuant to this Court's order, (Dkt. No. 168), the parties have provided the Court with an unredacted copy of the parties' proposed settlement agreement, which the Court has reviewed in camera. For the following reasons, the parties' motion is granted in part and denied in part.

### II. LEGAL STANDARD

"The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie County*, 763 F.3d 235, 238-39 (2d Cir. 2014). "Indeed, the common law right of public access to judicial documents is said to predate even the Constitution itself." *Id*. at 239. The First Amendment to the U.S. Constitution "also protects the public's right to have access to judicial documents." *Id*. A party seeking to seal

documents submitted to a court bears the burden of showing that sealing is proper. *See DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

### 1.      **Common Law Right of Access**

The Second Circuit has articulated a three-step process for determining whether documents should be sealed in light of the common law right of access. "Before any such common law right can attach . . . a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). To constitute a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo* (*Amodeo I*), 44 F.3d 141, 145 (2d Cir. 1995).

Second, after determining that the documents are judicial documents and that the "common law presumption of access attaches," the court must "determine the weight of that presumption." *Lugosch*, 435 F.3d at 119. According to the Second Circuit,

> the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.

*United States v. Amodeo* (*Amodeo II*), 71 F.3d 1044, 1049 (2d Cir. 1995). When a document plays a role in a court's adjudication of litigants' substantive rights—a function that is "at the heart of Article III"—the presumption is strong, but "[a]s one moves along the continuum, the weight of the presumption declines." *Id.* When "documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal." *Id.* at 1050.

Third, the court must balance any "competing considerations" against the weight of the presumption of access. *Lugosch*, 435 F.3d at 120. "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Id.* (quoting *Amodeo II*, 71 F.3d at 1050); *accord Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016). When weighing privacy interests, courts should consider "the degree to which the subject matter is traditionally considered private rather than public." *Amodeo II*, 71 F.3d at 1051. Courts should also assess the "nature and degree of injury," paying heed to "the sensitivity of the information and the subject" but also to "how the person seeking access intends to use the information." *Id.* at 1051 (explaining that "[c]ommercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts").

## 2. First Amendment Right of Access

The First Amendment right of access stems from the qualified right of the public and the press "to attend judicial proceedings and to access certain judicial documents." *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). Once a court concludes that there is a qualified First Amendment right of access to the judicial documents at issue, it may only seal the documents "if specific, on the record findings are made demonstrating the closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id*. (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). "Broad and general findings by the trial court . . . are not sufficient to justify closure." *Id*. (quoting *In re N.Y. Times Co.*, 828 F.2d at 116). Examples of "higher values" may include law enforcement interests, the privacy of innocent third parties, *Amodeo II*, 71 F.3d at 1050, and the attorney-client privilege, *Lugosch*, 435 F.3d at 125.

### III.  DISCUSSION

"While '[o]rdinarily, settlements of civil lawsuits are private arrangements between the parties . . . [and] the court 'normally plays no role whatever, standing 'indifferent' to the terms the parties have agreed to,' [i]n certain types of cases . . . [such as an infant compromise order], judicial scrutiny of a proposed settlement is required.'" *ABC v. XYZ Corp.*, No. 18-cv-11653, 2019 WL 1292503, at *6, 2019 U.S. Dist. LEXIS 47287, at *15-16 (S.D.N.Y. Mar. 19, 2019), *report and recommendation adopted*, 2019 WL 1304466, 2019 U.S. Dist. LEXIS 46421 (S.D.N.Y. Mar. 20, 2019) (alterations in original) (quoting *Geltzer v. Andersen Worldwide, S.C.*, No. 05-cv-3339, 2007 WL 273526, at *1, 2007 U.S. Dist. LEXIS 6794, at *1-3 (S.D.N.Y. Jan. 30, 2007)). In such cases, the settlement agreement the Court must approve is a judicial document subject to a strong presumption of public access, which is "not easily overcome." *Id.* (citations omitted); *see also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004) (citing *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993), for the proposition that "[t]he presumption in favor of the public's common law right of access to court records . . . applies to settlement agreements that are filed and submitted to the district court for approval"); *Olano v. Designs by RJR, Ltd.,* No. 17-cv-5703, 2017 WL 4460771, at *2, 2017 U.S. Dist. LEXIS 166279, at *4 (S.D.N.Y. Oct. 6, 2017) (observing, in the context of Fair Labor Standards Act ("FLSA") settlements which, like infant compromise settlements, are subject to court approval, that "[t]he overwhelming majority of courts in this Circuit that have analyzed the propriety of redacting FLSA settlement amounts or filing FLSA settlement agreements under seal have disapproved of those requests" due to the strong presumption of public access).

Here, to justify their request to file the settlement agreement and petition for approval in redacted form, the Home Depot Defendants submit a declaration from one such Defendant's Assistant General Counsel, which states that "[i]n negotiating the proposed settlement, [the

5

Home Depot Defendants] insisted that the financial terms of the settlement be kept confidential"; that "confidentiality of the financial terms of the settlement played a material role in Home Depot's decision to consent to the proposed settlement"; that "[m]aintaining confidentiality avoids any appearance of an admission of liability and the resulting reputational harm that may follow" and " also reduces the risk of copycat litigation or frivolous claims"; that "Home Depot's consent to the settlement of this case would not have been given without the Parties' joint agreement to keep the financial terms confidential"; and that "[c]onfidentiality was [therefore] vital to agreeing to settle the action." (Dkt. No. 167-3, at 2-3). The Quality Craft Defendants submit a similar declaration from their Vice President of Operations, which contains materially similar statements and adds that "[t]he Quality Craft Defendants were prepared to proceed to trial rather than broadcast how much they were willing to pay for this disputed claim." (Dkt. No. 167-4, at 3).

      Courts in this Circuit have repeatedly found that, without a more particularized showing of a need for confidentiality in a given case, these types of concerns—which are present in virtually every case like this one—are insufficient to overcome the presumption of public access to settlements requiring court approval, including in the infant settlement context. *See, e.g., Joji v. Kuwait Airways Corp.*, No. 08-cv-4339, 2010 WL 1286362, at *1, 2010 U.S. Dist. LEXIS 33982, at *3 (E.D.N.Y. April 2, 2010) ("[W]hile I understand and endorse the idea that the secrecy of settlement terms is generally useful in promoting consensual resolutions notwithstanding the potential loss of transparency, I must assume that the applicable law concerning infant compromise proceedings reflects a societal determination of how best to balance those interests. Because I can find no provision of that law—either as applied in New York State or as incorporated into the local rules of this court—that generally requires or permits

6

the filing of proposed settlements under seal, I must assume that the balance of interests favors openness absent some particularized need for secrecy arising from the circumstances of a given case."); *C.M. ex rel. P.M. v. Syosset Cent. Sch. Dist.*, No. 11-cv-1402, 2013 WL 5799908, at *5, 2013 U.S. Dist. LEXIS 157346, at *14-15 (E.D.N.Y. Oct. 25, 2013) (citing *Joji* analysis and holding that it "applies with equal force to the instant case"), *report and recommendation adopted*, 2013 WL 6157188, 2013 U.S. Dist. LEXIS 166529 (E.D.N.Y. Nov. 22, 2013); *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 338-39 (S.D.N.Y. 2012) (holding, in the FLSA context, that neither the existence of a confidentiality provision nor a defendant's concern about "copycat lawsuits or embarrassing inquiries" overcomes the presumption of public access to a settlement agreement subject to court approval, and collecting case law). The fact that Defendants aver their willingness to proceed to trial rather than consent to a settlement whose financial terms are publicly available cannot, in itself, constitute the necessary particularized showing. Such a conclusion would allow defendants in every infant settlement case to evade the well-settled rule requiring public access and transparency simply by insisting that they will not settle unless the settlement terms remain confidential.

  Plaintiffs, for their part, submit a declaration from Plaintiff Meghan Hunter, who joins Defendants' sealing request because (in addition to the fact that she "understand[]s that confidentiality was a key factor in the defendants' decision to settle" and "want[s] to settle this claim to bring finality to this action, avoid expensive and time-consuming litigation, and avoid the potential risk at trial that M.H. might not recover compensation for her injuries"), she "want[s] to protect M.H. and my privacy by maintaining the confidentiality of the financial terms." (Dkt. No. 167-2, at 2). She avers that her "interest in maintaining the confidentiality of the financial terms of the settlement is primarily to protect [her] daughter and [her] from requests

7

for money and various nuisance offers, solicitations and scams that we might face if my daughter's financial recovery becomes public knowledge." (*Id.* at 3).

The Court recognizes that at least one court in this Circuit has expressly rejected an argument that such concerns can overcome the presumption of public access in an infant settlement case. *Joji*, 2010 WL 1286362, at *1, 2010 U.S. Dist. LEXIS 33982, at *2-3 ("The infant plaintiff's interest in privacy with respect to the amount of his recovery is understandable, but the parent who sued on his behalf was manifestly prepared to sacrifice that interest to secure an even greater recovery following a jury trial, the result of which would necessarily have been public."). On the other hand, at least one other court appears to have found that, while such concerns are insufficient to justify wholesale sealing of infant settlement proceedings, they can, in appropriate circumstances, at least justify limited redactions of the settlement amount from public filings. *Savarese v. Cirrus Design Corp.*, No. 09-cv-1911, 2010 WL 815027, at *1, 2010 U.S. Dist. LEXIS 21690, at *2-3 (S.D.N.Y. Mar. 9, 2010).[1] The settlement amount itself may be one relevant factor in determining whether, in a particular case, a plaintiff's privacy concerns regarding the settlement are significant and legitimate enough to overcome the usual presumption to public access. *Cf. Camac v. Long Beach City Sch. Dist.*, No. 09-cv-5309, 2012 WL 3277228, at *1 n.1, 2012 U.S. Dist. LEXIS 112470, at *1 n.1 (E.D.N.Y. July 25, 2012) (finding that the parties' joint interest in confidentiality was "not compelling here given," among other things, "the 'nuisance' value sum at issue"), *report and recommendation adopted*, 2013 WL 991355, 2013 U.S. Dist. LEXIS 34858 (E.D.N.Y. Mar. 13, 2013).

---

[1] While the *Savarese* opinion does not state a basis for finding that redaction of the infant settlement amount was justified, publicly available filings on the docket make clear that the primary motivating factor in the plaintiffs' sealing request was the mother plaintiff's concern that she and her children would be "harassed and annoyed by individuals with no legitimate interest in [the] case" if the settlement were to be made public. *Savarese v. Cirrus Design Corp.*, No. 09-cv-1911 (S.D.N.Y. Mar. 18, 2010), ECF No. 27, at 1; *see also Savarese v. Cirrus Design Corp.*, No. 09-cv-1911 (Feb. 24, 2010), ECF No. 21, at 1.

Here, the parties have not sought wholesale redaction of the settlement agreement, the petition to approve it or the related proceedings (and none of the concerns they cite would justify such wholesale sealing); rather, they have only sought redaction of the financial information contained therein. While the generic policy concerns cited by Defendants ordinarily would be insufficient to overcome the presumption of public access with respect to these key settlement terms, under the circumstances of this particular case—where Plaintiffs themselves also seek redaction of this information, citing privacy concerns that the Court finds to be legitimate and plausible in light of the settlement amount and other settlement terms—the Court finds that limited redaction of certain financial information from the settlement agreement is justified and necessary to protect Plaintiffs' legitimate privacy interests which outweigh the presumption of public access under both the common law and the First Amendment.[2]

Therefore, the parties may redact the gross settlement amount and individual distribution amounts from the publicly filed version of their settlement agreement and petition to approve it. The parties may *not,* however, redact information about attorneys' fees, litigation costs or expenses from their public filings, as public disclosure of that information does not reveal anything about the settlement amount that would implicate Plaintiffs' privacy concerns,[3] and the

---

[2] The Court emphasizes that its conclusion is limited to the particular circumstances of the case before it. The Court does not consider whether the types of concerns Plaintiff cites would justify redacting a settlement amount in a different infant settlement case with distinguishable facts, or in a case involving another type of settlement with different policy considerations at play. *Cf. Joo v. Kitchen Table, Inc.*, 763 F. Supp. 2d 643, 645 (S.D.N.Y. 2011) (explaining that one rationale supporting public access to FLSA settlements notwithstanding the parties' desire for confidentiality is the "private-public character of employee rights under the FLSA, whereby the public has an independent interest in assuring that employees['] wages are fair and thus do not endanger the national health and well-being") (internal citation and quotation marks omitted).

[3] The settlement agreement provided to the Court *in camera* does not include an award of attorneys' fees as a percentage of the total settlement amount, contain a cost-shifting provision, or otherwise include any other information about attorneys' fees or litigation expenses.

parties have not otherwise made a showing that any privacy interest they have in that information outweighs the strong presumption of public access under *Lugosch*.

## IV.  CONCLUSION

For these reasons, it is hereby

**ORDERED** that the parties' joint motion to redact the gross settlement amount, individual distribution amounts, litigation expenses and attorneys' fees from their forthcoming petition to approve their settlement of the infant plaintiff's claim, (Dkt. No. 167), is **GRANTED** as to the gross settlement amount and individual distribution amounts, but **DENIED** as to attorneys' fees or litigation expenses.

**IT IS SO ORDERED.**

Dated: May 28, 2021
Syracuse, New York

*[signature]*
Brenda K. Sannes
U.S. District Judge

10